David W. Tufts (SBN 180817)
DENTONS DURHAM JONES PINEGAR P.C.
111 S. Main, Suite 2400,
Salt Lake City, UT 84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500
david.tufts@dentons.com

Jae K. Park (SBN 234474)
DENTONS US LLP
4655 Executive Drive, Ste 700
San Diego, CA 92121
Telephone: (619) 236-1414
Facsimile: (619) 232-8311
jae.park@dentons.com

Attorneys for Genasys Inc.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GENASYS INC., a Delaware corporation,<br><br><br><br>Plaintiff,<br><br>vs.<br><br>VECTOR ACOUSTICS, LLC, a Delaware limited liability company; HERNAN FREDERICK LOPEZ, an individual; MARCEL NAUJOK, an individual; and DOES 1 through 10,<br><br>Defendants. | Case No.: 3:22-cv-00152-TWR-BLM<br><br>**PLAINTIFF GENASYS INC.'S OPPOSITION TO DEFENDANT MARCEL NAUJOK'S MOTION TO DISMISS COMPLAINT OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT**<br><br>Date: May 19, 2022<br>Time: 1:30 p.m.<br>Judge: Hon. Todd W. Robinson<br>Ctrm.: 3A, Room 3130<br><br>Complaint Filed: February 2, 2022<br>Trial Date: Not Set |

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION .................................................................... - 1 -

II.  STATEMENT OF FACTS ........................................................ - 2 -

     A.   Introduction to Genasys ............................................. - 2 -

     B.   Genasys' Confidential and Proprietary Information .................... - 2 -

          1.   Genasys' Customer Data and the Army Presentation ......... - 2 -

          2.   Genasys' Customer Network ................................. - 3 -

          3.   Genasys' Pricing Information .............................. - 4 -

     C.   Naujok's Work for Genasys ........................................ - 4 -

     D.   Vector Acoustics ................................................. - 5 -

III. ARGUMENT ...................................................................... - 6 -

     A.   Naujok's Request for Judicial Notice Should be Denied ............ 6

     B.   Breach of Contract .............................................. - 9 -

          1.   The Breach of Contract Claim is Not "Fatally Uncertain". - 9 -

          2.   The Agreements are Not Void ............................. - 12 -

     C.   Trade Secret Misappropriation ................................... - 13 -

          1.   Genasys Identified its Trade Secrets with Sufficient
               Particularity. ........................................... - 13 -

          2.   Genasys' Trade Secret Information is Not Publicly
               Available. ............................................... - 15 -

          3.   Genasys has Sufficiently Alleged Misappropriation. ....... - 16 -

     D.   Unjust Enrichment ............................................... - 17 -

     E.   California Business & Professions Code § 17200 .................. 18

F.    Naujok's Request for a More Definite Statement Should be Denied . - 22 -

G.    Naujok is Not Entitled to Attorney Fees. .................................... - 22 -

IV.  CONCLUSION ........................................................................... - 23 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced BioTech, LLC v. BioWorld USA, Inc.*,
No. 1:19-cv-01215-NONE-SKO, 2020 WL 5797929 (E.D. Cal.
Sept. 29, 2020) ..................................................................................8

*Advanced Risk Managers, LLC v. Equinox Mgmt. Grp., Inc.*,
No. 19-cv-03532-DMR, 2019 WL 6716292 (N.D. Cal. Dec. 10,
2019) ...................................................................................................7

*AlterG, Inc. v. Boost Treadmills LLC*,
388 F. Supp. 3d 1133 (N.D. Cal. 2019).............................................11

*Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.*,
No. 11–CV–1890–H, 2011 WL 5025178 (S.D. Cal. Oct. 21, 2011) ...............20

*Annunziato v. Guthrie*,
CV 20-11592-RSWL-JPRx, 2021 WL 4816639 (C.D. Cal. May
20, 2021) .............................................................................................9

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)..............................................................................6

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)..............................................................................6

*BladeRoom Grp. Ltd. v. Facebook, Inc.*,
219 F. Supp. 3d 984 (N.D. Cal. 2017)...............................................17

*C.B. v. Sonora Sch. Dist.*,
691 F. Supp. 2d 1170 (E.D. Cal. 2010) .............................................22

*Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*,
2021 WL 1186335 (N.D. Cal. Mar. 1, 2021) ....................................16

*Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.*,
2018 WL 2558388 (C.D. Cal. Feb. 27, 2018) ...................................16

*Courtesy Temp. Serv., Inc. v. Camacho*,
222 Cal. App. 3d 1278 (Ct. App. 1990).............................................19

Case No.: 3:22-CV-00152-TWR-BLM

*DJO Glob., Inc.* v. *Glader*,
No.: 3:16-cv-02208-CAB, 2016 WL 11622009 (S.D. Cal. Dec. 22,
2016) ...................................................................................................... 19

*Elderson v. Travel Insured International, Inc., et al*,
No.: 21-cv-323-WQH-AGS, 2021 WL 4334075 (S.D. Cal. Sept.
23, 2021) ................................................................................................ 17

*ESI Grp. v. Wave Six, LLC*,
No. 17-CV-2293 TWR (MSB), 2021 WL 5206136 (S.D. Cal.
Nov. 9, 2021) ......................................................................................... 12

*FunCat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*,
02:06-cv-0533-GEB-GGH, 2006 WL 8458932 (E.D. Cal. July 25,
2006) ...................................................................................................... 18

*Hanger Prosthetic & Orthotics, Inc. v. Capstone Orthopedic, Inc.*,
556 F. Supp. 2d 1122 (E.D. Cal. 2008) ................................................ 19

*Henry Schein, Inc. v. Cook*,
191 F. Supp. 3d 1072 (N.D. Cal. 2016) ................................................ 14

*Hsu v. Puma Biotechnology, Inc.*,
213 F. Supp. 3d 1275 (C.D. Cal. 2016) .................................................. 7

*Indigo Grp. USA, Inc. v. Polo Ralph Lauren Corp.*,
No. CV-11-5883-MWF, 2014 WL 12573380 (C.D. Cal. Mar. 17,
2014) ...................................................................................................... 22

*InteliClear, LLC v. ETC Glob. Holdings*, Inc., 978 F.3d 653, 659 (9th
Cir. 2020) ......................................................................................... 14, 15

*Isturiz v. Garland*,
860 F. App'x 489 (9th Cir. 2021) ......................................................... 13

*Johnson v. City of Shelby, Miss.*,
574 U.S. 10 (2014) ................................................................................... 6

*Lehman Bros. Holdings, Inc. v. PMAC Lending Servs., Inc.*,
No. CV0903785SJOSHX, 2009 WL 10674104 (C.D. Cal. Sept.
16, 2009) ........................................................................................... 10, 11

*Lepton Labs, LLC v. Walker*,
55 F. Supp. 3d 1230 (C.D. Cal. 2014) .................................................. 20

*Missud v. Oakland Coliseum Joint*
   Venture, No. 12-02967 JCS, 2013 WL 3286193 (N.D. Cal. June
   27, 2013) ................................................................................................21

*Moreno v. UtiliQuest, LLC*,
   29 F.4th 567 (9th Cir. 2022) ...................................................................11

*PerkinElmer Health Scis., Inc. v. Mahnaz Salem*,
   No. CV 21-1619-DMG (KSX), 2021 WL 2548684 (C.D. Cal.
   Apr. 9, 2021) ...........................................................................................11

*Planet Coffee Roasters, Inc. v. Dam*,
   No. SACV 09–00571–MLG 2009 WL 2486457 (C.D. Cal. Aug.
   12, 2009) ................................................................................................21

*Power Integrations, Inc. v. De Lara*,
   No. 20-CV-410-MMA (MSB), 2020 WL 1467406 (S.D. Cal. Mar.
   26, 2020) ................................................................................................12

*Quadri v. Sallie Mae Co.*,
   No. F043079, 2004 WL 396877 (Cal. Ct. App. Mar. 4, 2004) ........................11

*San Bernardino Pub. Employees Ass'n v. Stout*,
   946 F. Supp. 790 (C.D. Cal. 1996) ...........................................................22

*Sennco Sols., Inc. v. Mobile Techs., Inc.*,
   No. 3:20-CV-1426-JR, 2021 WL 463436 (D. Or. Feb. 9, 2021) ....................15

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) ..................................................................19

*Snelling Servs., LLC v. Diamond Staffing Servs., Inc.*,
   WL 3947175 (Cal. Ct. App. July 30, 2013) ................................................20

*Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*,
   521 F. Supp. 3d 929 (S.D. Cal. 2021)..........................................................9

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
   996 F. Supp. 2d 942 (S.D. Cal. 2014).........................................................18

*Spice Jazz LLC v. Youngevity Int'l, Inc.*,
   No. 19-CV-0583-BAS-DEB, 2020 WL 6484640 (S.D. Cal. Nov.
   4, 2020) ................................................................................................15

Case No.: 3:22-CV-00152-TWR-BLM

*Swierkiewicz v. Sorema N. A.*,
    534 U.S. 506 (2002) ........................................................................ 6

*T3 Micro, Inc. v. SGI Co.*,
    CV 09-08783 SJO, 2010 WL 11597603 (C.D. Cal. July 28, 2010) ............... 15

*Threshold Enterprises Ltd. v. Functional Brands, LLC*,
    No. C07-1400 BZ, 2007 WL 1747122 (N.D. Cal. June 18, 2007) ................. 21

*U.S. Legal Support, Inc. v. Hofioni*,
    CIV. S–13–01770 LKK/AC, 2013 WL 6844756 (E.D. Cal. Dec.
    20, 2013) ......................................................................................... 19

*Unicolors Inc. v. Connection 18 by Sicura et al.*,
    No. CV 15-03650-BRO, 2016 WL 11760221 (C.D. Cal. Aug. 15,
    2016) ................................................................................................. 8

*Vendavo, Inc. v. Prixe*,
    2018 WL 1456697 ............................................................................ 13

*Whyte v. Schlage Lock Co.*,
    101 Cal. App. 4th 1443, 125 Cal. Rptr. 2d 277 (2002) ....................... 15

*Woodall v. Walt Disney Co.*,
    No. CV 20-3772-CBM-(EX), 2021 WL 4442410 (C.D. Cal. Aug.
    5, 2021) ........................................................................................... 14

*Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*,
    Case No.: 18cv1927 JM, 2021 WL 4895977 (S.D. Cal. Oct. 20,
    2021) ........................................................................................... 8, 16

*Yield Dynamics, Inc. v. TEA Sys. Corp.*,
    154 Cal. App. 4th 547 (2007) ........................................................... 22

**Statutes**

California Business and Professions Code
    § 16600 ............................................................................................ 12
    § 17200 ......................................................................... 18, 19, 20, 21
    § 17500 ...................................................................................... 21, 22

California Code of Civil Procedure
    section 3426.4 ................................................................................. 22
    § 3426.7(a)(1) ................................................................................. 19

**Rules and Regulations**

Federal Rules of Civil Procedure

    Rule 8(a)...................................................................................10, 21

    8(a)(3) ............................................................................................20

    Rule 9(b) .........................................................................................21

    Rule 12(b)(6).................................................................................14

Federal Rules of Evidence

    602.....................................................................................................8

Case No.: 3:22-CV-00152-TWR-BLM

## I. INTRODUCTION

Defendant Marcel Naujok ("Naujok") was Genasys' Vice President of Business Development for the Pacific Rim region. His co-defendant, Herman Lopez ("Lopez"),[1] was Vice President of Product Development for Genasys. Lopez quit and formed a competing company, Vector Acoustics, LLC ("Vector Acoustics"). At some point, Naujok joined him at Vector Acoustics. Together, they are using Genasys' confidential intellectual property to compete against Genasys. Genasys welcomes legitimate competition. But using Genasys' confidential and proprietary information without authorization is not legitimate competition.

In his motion to dismiss Genasys' Complaint (the "Motion"), Naujok throws a range of arguments against the wall to see what sticks. He claims Genasys' allegations are too vague while side-stepping the actual assertions in the Complaint—which go so far as to identify a particular PowerPoint into which Naujok and Lopez wrongfully inserted confidential customer information. He argues that Genasys' claims are unsupported by law while ignoring precedent and misconstruing pleading standards. Displaying his lack of confidence in his ability to challenge the Complaint within its four corners, he improperly asks the Court to access various webpages and look through over 70 pages of printouts from the internet that, ultimately, are irrelevant to the disposition of the Motion. Naujok concludes his Motion with an unsupported request for a more definite statement and a procedurally improper and baseless demand for attorney fees. Genasys easily meets the relevant pleading standard by alleging plausible claims and Naujok's Motion should be denied in its entirety.

---

[1] Lopez and Vector Acoustics filed a separate motion to dismiss. (Dkt. 11.) Although there is substantial overlap in the subject matter of the two motions, each motion contains unique arguments and there are nuanced differences in the relief requested. As such, Genasys will provide each motion with its own opposition. In the future, to the extent it does not result in prejudice to Genasys, Genasys will support efforts by the Defendants to consolidate their motion practice to avoid unnecessary duplication.

Case No.: 3:22-CV-00152-TWR-BLM

## II. STATEMENT OF FACTS

### A. Introduction to Genasys

Genasys, a leader in the Acoustic Hailing Device Industry ("AHD Industry"), develops and manufactures large-scale communication systems such as emergency warning systems and public safety mass notification systems. Its products are used by various governmental and commercial organizations throughout the world. (Dkt. 1 at ¶ 9.)[2] Among Genasys' products are line array loudspeakers for outdoor warning systems and acoustic hailing devices for long-range communication. The Complaint refers to these products, as well as other products manufactured by Genasys as "Legitimate Genasys Products." (Dkt. 1 at ¶ 10.)

Members of Genasys' engineering and business development departments regularly hold confidential product development meetings in which various design improvements to the Legitimate Genasys Products are proposed and discussed ("Confidential Products Development Meetings"). (Dkt. 1 at ¶ 13.) In order to protect its interests with respect to innovation and development, Genasys requires both its engineering employees and its business development employees to sign a Proprietary Information and Inventions Agreement and other employment agreements ("Agreements") that impose disclosure and confidentiality requirements on employees. (Dkt. 1 at ¶¶ 14, 15, 22, 24, 27.)

### B. Genasys' Confidential and Proprietary Information

#### 1. Genasys' Customer Data and the Army Presentation

Genasys regularly meets with customers to discuss client needs. Moreover, with respect to governmental clients that must undergo various reviews in order to maintain funding, Genasys often participates in highly restricted governmental programmatic reviews related to current uses of the Legitimate Genasys Products. (Dkt. at ¶ 18.) In these confidential settings, clients share important information

---

[2] Citations to the Complaint (Dkt. 1) cite specific paragraphs. All other docket citations refer to CMECF generated numbering located in the header of each page.

regarding their industry needs ("Confidential Client Data"). (Dkt. 1 at ¶ 19.) In order to protect the Confidential Client Data, Genasys limits access to Confidential Client Data and, as part of the Agreements, requires its employees to hold "customer information" and information relating to "the business, products, practices and techniques" of its clients in the strictest confidence and not to use, publish, or disclose such information without authorization. (Dkt. 1 at ¶ 22.)

In one such programmatic review held on May 8, 2019, the United States Army made a presentation to Genasys regarding the Army's use of the Legitimate Genasys Products and, in particular, the various vehicles and ships on which the Legitimate Genasys Products are mounted. (Dkt. 1 at ¶ 32.) After the completion of the May 8, 2019 programmatic review, the Army provided a hard copy of certain slides shown in its presentation to Genasys that included Confidential Client Data. (Dkt. 1 at ¶ 33.)[3] These slides were prepared specifically for and shared exclusively with Genasys ("Army Confidential Presentation Materials"). (Dkt. 1 at ¶ 34.) The Army Confidential Presentation Materials were carefully guarded by Genasys and the sharing of the Army Confidential Presentation Materials was extremely limited within Genasys. (Dkt. 1 at ¶ 36.)

### 2. Genasys' Customer Network

Over the years, Genasys has developed an intricate network of customers throughout the world that consists of both resellers and end users of Legitimate Genasys Products (Genasys' "Customers"). (Dkt. 1 at ¶ 23.) This network, and the tangible manifestation of this network in the form of customer and prospective customer lists and contact information ("Customer Network"), holds significant independent value by providing an effective business and marketing program that is not available to others in the AHD Industry. *Id.* Genasys carefully guards against

---

[3] The e-mail chain by which the Army transferred this material to Genasys provides the following instruction: "This communication may contain information that is confidential in nature and unauthorized use or disclosure is strictly prohibited. If you are not the intended recipient, kindly reply or call at the number above to alert us. Afterward, please delete this communication in its entirety." (Dkt. 1 at 35.)

Case No.: 3:22-CV-00152-TWR-BLM

disclosure of its Customer Network through, for instance, requiring that as part of the Agreements, employees hold in the strictest confidence, and not use, publish, or disclose without authorization, "any past, present, or future . . . sales and customer information [and] customer and prospect lists." (Dkt. 1 at ¶ 24.)

### 3. Genasys' Pricing Information

Genasys carefully monitors the pricing of the Legitimate Genasys Products ("Pricing Information") and does not make such information publicly available. (Dkt. 1 at ¶ 25.) The confidential nature of the Pricing Information allows Genasys to maintain its status as a leader in the AHD Industry by competitively pricing its market offering and the Pricing Information thereby holds significant independent value. (Dkt. 1 at ¶ 26.) In order to protect its Pricing Information, Genasys strategically and selectively discloses its prices and requires all employees as part of the Agreements to hold business and financial information relating to the products of the Company in strictest confidence and not to use, to publish, or to disclose such information without written authorization. (Dkt. 1 at ¶ 27.)

### C. Naujok's Work for Genasys

Genasys hired Naujok in June 2013 as its Vice President of Business Development – Pacific Rim, responsible for overseeing a substantial portion of the Customer Network. (Dkt. 1 at ¶ 41.) In connection with his employment with Genasys, Naujok entered into the Agreements and assumed the confidentiality commitments contained therein. (Dkt. 1 at ¶ 42.) During his time at Genasys, Naujok became intimately familiar with Pricing Information, the Customer Network, Confidential Client Data, and other proprietary information of Genasys, such as proposed product modifications to the Legitimate Genasys Products.[4] (Dkt. 1 at ¶¶ 43, 44.) Naujok was employed by Genasys until October 2018. (Dkt. 1 at ¶ 45.) Following

---

[4] During Confidential Product Development Meetings, various design improvements were discussed, such as increasing the usability of the Legitimate Genasys Products through innovations such as implementing blue tooth capabilities and increasing the power and audio output of the Legitimate Genasys Products ("Proposed Product Modifications"). (Dkt. 1 at ¶ 30.)

the termination of his employment with Genasys, Naujok continued to provide various consulting services for Genasys from October 2018 until May 2021 and during this period, continued to receive information regarding the Customer Network, Confidential Client Data, Proposed Product Modifications, and other proprietary information of Genasys. (Dkt. 1 at ¶ 46.)

**D.    Vector Acoustics**

In January 2020, Lopez formed a company called Vector Acoustics. (Dkt. 1 at ¶ 47.) As set forth on its website, Vector Acoustics describes its business as "Design and Manufacturing of Loudspeakers and Audio Systems for Challenging Applications[.]" (Dkt. 1 at ¶ 48.) Naujok is assisting Lopez with respect to Vector Acoustic's Business. (Dkt. 1 at ¶ 49.) Much of Vector Acoustic's product offering appears to be mere reproduction of Legitimate Genasys Products with the addition of the Proposed Product Modifications and/or superficial alterations ("Faux Genasys Products"). (Dkt. 1 at ¶ 50.) In designing and manufacturing the Faux Genasys Products for Vector Acoustics, it is believed that Lopez and Naujok relied on Genasys' Confidential Client Data, including, but not limited to the Army Confidential Presentation Materials, and Proposed Product Modifications, as well as other proprietary information of Genasys. (Dkt. 1 at ¶ 51.)

Relying on Genasys' Customer Network, Vector Acoustics has contacted Genasys' Customers in various locations throughout the world and marketed the Faux Genasys Products using Genasys' Pricing Information and Confidential Client Data. (Dkt. 1 at ¶ 52.) Lopez and Naujok prepared marketing materials ("Vector Acoustic's Marketing Materials") using Confidential Client Data, including the Army Confidential Presentation Materials. (Dkt. 1 at ¶ 53.) For instance, Lopez and Naujok prepared a PowerPoint presentation in which they inserted the Army Confidential Presentation Materials that the Army had provided to Genasys in connection with its programmatic review. (Dkt. 1 at ¶ 54.) Vector Acoustics has shared this presentation with one or more of Genasys' international Customers. *Id*. Vector Acoustics has also

Case No.: 3:22-CV-00152-TWR-BLM

been spreading misinformation regarding the Legitimate Genasys Products to one or more of Genasys' Customers including, for instance, suggesting that Genasys' patents on the Legitimate Genasys Products have expired. (Dkt. 1 at ¶ 55.)

## III. ARGUMENT

As the Supreme Court made clear in *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014), *Twombly* and *Iqbal* instruct plaintiffs to "plead facts sufficient to show that [its] claim has substantive plausibility." *Id*. at 12. "Asking for plausible grounds . . . simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence" supporting the claim. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, it must merely "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002) "Given the Federal Rules' simplified standard for pleading, 'a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Id*., at 514 (brackets removed).

Naujok's Motion should be denied in its entirety because it is predicated on the improper attempt to introduce evidence and purported "facts" outside the four-corners of the Complaint through a faulty request for judicial notice.  Further, Genasys' Complaint describes how Naujok willingly accepted confidentiality obligations and then improperly used Genasys' confidential and proprietary information without authorization to advance his new business at Vector Acoustics. Naujok has been provided with fair notice of Genasys' allegations and Genasys has stated a plausible claim for relief for each cause of action asserted in its Complaint.

### A. Naujok's Request for Judicial Notice Should be Denied

Genasys objects to the Request for Judicial Notice ("Request") and the corresponding declaration of Naujok's counsel, Alissa R. Pleau-Fuller, together with

its attached exhibits ("Declaration"). (*See* Dkt. 10-2, 10-3.) Naujok improperly asks the Court to take notice of "*the existence and content*" of printouts from internet websites and searches conducted by Attorney Pleau-Fuller. (Dkt. 10-3 at 2 (emphasis added).) This is not how judicial notice works. Rather:

> Judicial notice is an explicitly limited doctrine that's supposed to be used to allow a court to consider "**a fact** that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. For example, a court might take judicial notice that January 4, 1986, was a Saturday, or that a party filed a brief opposing a motion in a state court case, or that a particular document was recorded with the county recorder's office.

*Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1280 (C.D. Cal. 2016) (emphasis added). Thus, "[i]f a court takes judicial notice of a document, it must identify the specific fact or facts it is noticing from the document." *See Advanced Risk Managers, LLC v. Equinox Mgmt. Grp., Inc.*, No. 19-cv-03532-DMR, 2019 WL 6716292, at *3 (N.D. Cal. Dec. 10, 2019).

Naujok has made no effort to identify which fact or facts from the 70-plus pages of documents he has submitted that he requests the Court take judicial notice. Instead, Naujok refers to all his exhibits collectively, *and in their entirety*. (*See, e.g.*, Dkt. 10-1 at 20 ("Its website lists its partners and it consistently reports on its various customers throughout the world (including in its publicly filed disclosures), such that their identity cannot genuinely described as remaining a secret. (*See, e.g.*, RJN Nos. 1-4 and Pleau-Fuller Decl., Exs. A-D.)" (emphasis added).) Again, this is not how judicial notice works. *See Hsu*, 213 F. Supp. 3d at 1280 ("Unfortunately, too many attorneys don't understand judicial notice. Some take judicial notice literally, as a command. 'Hey! Judge! Look!' They use judicial notice to get a court's attention like a businessman who's running late and trying to whistle down a taxi on a crowded downtown street. But courts aren't cabbies, and judicial notice isn't appropriately used this way.").

Case No.: 3:22-CV-00152-TWR-BLM

Ultimately, "a party requesting judicial notice bears the burden of persuading the trial judge that the fact is a proper matter for judicial notice." *See Advanced BioTech, LLC v. BioWorld USA, Inc.*, No. 1:19-cv-01215-NONE-SKO, 2020 WL 5797929, at *3 (E.D. Cal. Sept. 29, 2020). Genasys, of course, has already acknowledged that it strategically and selectively discloses certain price and customer information (*see* Dkt. 1 at ¶ 27). As such, the Request serves no legitimate purpose and is irrelevant to the proper determination of the Motion. *See id.* ("A court may decline to take judicial notice of irrelevant documents.").[5] In any event, the Motion is an inappropriate forum to engage in the fact-based inquiry of whether Genasys made "reasonable efforts" to maintain the secrecy of its trade secrets. *See Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*, Case No.: 18cv1927 JM, 2021 WL 4895977, at *22 (S.D. Cal. Oct. 20, 2021) ("Whether a party's efforts are 'reasonable' is ordinarily an issue for the trier of fact."). As such, the Request should be denied.

Further, Exhibit B of the Declaration is inadmissible on a number of additional bases. Exhibit B is supposedly a "list of Genasys products with pricing information" that resulted from a "search[] for Genasys products" on the GSA website. (Dkt. 10-2 at 2.) The Declaration, however, fails to explain how the search was conducted and how it was determined that the products "located" were in fact Genasys products. As such, it lacks foundation. *See* Fed. R. Evid. 602 (requiring evidence of personal knowledge of the matter).

Moreover, Exhibit B constitutes hearsay because it is a compilation of out of court statements offered to prove the truth of the matter asserted (i.e., that the pricing listed therein constitutes Genasys' pricing) and no exception applies. *See Unicolors Inc. v. Connection 18 by Sicura et al.*, No. CV 15-03650-BRO, 2016 WL 11760221,

---

[5] To the extent the Request is meant to inferentially suggest that Genasys disclosed all or substantially all of its customer and pricing information, Naujok fails to introduce evidence to this effect. Therefore, any such intended inference is improper.

at *2 (C.D. Cal. Aug. 15, 2016) (refusing to take judicial notice of images pulled from the internet because, among other things, the images constituted hearsay).[6]

As such, the Request should be denied in its entirety, and each of the attached exhibits should be excluded from the Court's consideration.

## B. Breach of Contract

Naujok advances a two-pronged attack on Genasys' breach of contract claim. He first argues that the claim is "Fatally Uncertain" and then pivots to suggest that that the Agreements are "void and unenforceable." (Dkt. 10-1 at 12-16.) Both arguments fail.

### 1. The Breach of Contract Claim is Not "Fatally Uncertain"

To adequately state a claim for relief for breach of contract, a plaintiff has the option to plead the terms of the contract "either in *haec verba* or according to legal effect." *Soil Retention Prod., Inc. v. Brentwood Indus., Inc.*, 521 F. Supp. 3d 929, 951 (S.D. Cal. 2021) (italics added). With respect to legal effect, "the Court must be able generally to discern at least what material obligation of the contract the defendant allegedly breached[,]" which Genasys has done. *See Annunziato v. Guthrie*, CV 20-11592-RSWL-JPRx, 2021 WL 4816639, at *3 (C.D. Cal. May 20, 2021).

Here, Genasys alleges that it hired Naujok in June 2013, and in connection with his employment with Genasys, Naujok entered into the Agreements and assumed the confidentiality commitments referred to in the Complaint. (Dkt. 1 at ¶¶ 41, 42.) Genasys also identified specific contractual commitments that are at issue in this litigation:

- "[T]o hold 'customer information' and information relating to 'the business, products, practices and techniques' of its clients in the strictest confidence and not to use, publish, or disclose such information without Genasys' Board of Directors written authorization." (Dkt. 1 at ¶ 22.)

---

[6] As it happens, a cursory review of Exhibit B suggests that the prices listed are not what Naujok purports them to be and instead appear to be prices provided by certain Genasys resellers. Clearly, these are not documents whose accuracy cannot reasonably be questioned.

- "[To] hold in the strictest confidence, and not use, publish, or disclose without written authorization of the Board of Directors of the Company, "any past, present, or future . . . sales and customer information [and] customer and prospect lists." (Dkt. 1 at ¶ 24.)

- "[T]o hold business and financial information relating to the products of the Company in strictest confidence and not to use, to publish, or to disclose such information to any person, firm or corporation without written authorization of Genasys' Board of Directors." (Dkt. 1 at ¶ 27.)

In addition to outlining the specific obligations of the Agreements that have been breached, Genasys further outlines Naujok's breaches, including his use of the information provided by Genasys' clients regarding their industry needs and, specifically, the insertion of the Army Confidential Presentation Materials in the Vector Acoustics Marketing Materials, and using Genasys' customer and prospective customer lists, contact information, and the pricing of Genasys' Products in the marketing and sale of Faux Genasys Products. (*See e.g.,* Dkt. 1 at ¶¶ 52–54, 56, 67.)

Instead of addressing these specific allegations, Naujok settles on a ram-rod approach of mischaracterizing the allegations with adjectives such as "amorphous" and "[u]ncertain[.]" (*See* Dkt. 10-1 at 12, 13.)[7] This is insufficient. Genasys has set forth the legal effect of the Agreements and satisfied its pleading requirements under Rule 8(a). *See Lehman Bros. Holdings, Inc. v. PMAC Lending Servs., Inc.*, No. CV0903785SJOSHX, 2009 WL 10674104, at *2 (C.D. Cal. Sept. 16, 2009). Naujok also argues that the Complaint is deficient because it alleged the existence of more than one contract. (Dkt. 10-1 at 14–15.) Naujok cites no case law suggesting that alleging the existence of more than one contract is inappropriate or that it requires dismissal. To the contrary, *PMAC Lending Services., Inc.,* cited above, indicates the opposite is true:

> PMAC moves to dismiss LBHI's claim for breach of contract on the grounds that while LBHI alleges the existence of multiple contracts, it does not set forth the specific terms or the precise language of the alleged contracts within the Complaint. Additionally, PMAC contends that LBHI failed to specifically identify how PMAC breached the Agreement. PMAC's contentions are futile because by alleging the

---

[7] To the extent the Court prefers the Agreements to be affixed to the pleading, Genasys will certainly comply.

existence of a contract and including a basic summary of its terms and conditions, LBHI has met its burden under Rule 8(a) and has provided a "short and plain statement of the claim" sufficient to place PMAC on notice of the claims against it and to allow for a meaningful response.

*Lehman Bros.*, 2009 WL 10674104, at *2 (emphasis added).[8]

Lastly, Naujok suggests that Genasys has not alleged facts to support its allegation that it performed its end of the bargain. (Dkt. 10-1 at 15.) The Complaint, however, expressly notes that Genasys offered Naujok employment from June 2013 through October 2018. (Dkt. 1 at ¶¶ 41, 45, 59); *PerkinElmer Health Scis., Inc. v. Mahnaz Salem*, No. CV 21-1619-DMG (KSX), 2021 WL 2548684, at *3 (C.D. Cal. Apr. 9, 2021) ("PerkinElmer has demonstrated that Salem signed a written agreement in which she promised to keep proprietary information confidential in consideration of her employment with PerkinElmer. PerkinElmer fulfilled its end of the bargain by hiring and compensating her."); *see also*, *Quadri v. Sallie Mae Co.*, No. F043079, 2004 WL 396877, at *4 (Cal. Ct. App. Mar. 4, 2004) (finding an allegation that a plaintiff "performed all obligations to the defendant except those obligations he was prevented or excused from performing" sufficient to satisfy the second element of a breach of contract claim). Genasys has sufficiently alleged performance.

---

[8] Naujok also argues "as defined, the Agreements only include obligations for employees." (Dkt. 10-1 at 14.) Naujok appears to be seeking an inference that the confidentiality obligations he assumed as an employee no longer apply following the resignation of his employment. This is impermissible. At this stage, any inference should be drawn in Genasys' favor. *See Moreno v. UtiliQuest, LLC*, 29 F.4th 567, 573 (9th Cir. 2022) ("In reviewing a motion to dismiss, we accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party."). As pled, Naujok himself agreed to hold information confidential with no reference to a termination of such obligations at the end of his employment. (*See* Dkt. 1 at ¶¶ 22, 24, 27, 42.). As such, any inference regarding the duty of confidentiality should be made in Genasys' favor. *See, e.g.*, *AlterG, Inc. v. Boost Treadmills LLC*, 388 F. Supp. 3d 1133, 1147 (N.D. Cal. 2019) ("The allegations with respect to Allen's and Bean's agreements are not so explicit, but the complaint states that the agreements required Allen and Bean to 'not disclose any of AlterG's confidential and proprietary information without AlterG's permission' without mentioning any time limitation. It is therefore reasonable to infer that the duty of confidentiality imposed by Defendants' agreements extended beyond their periods of employment." (internal citation omitted)). Naujok's argument that Genasys' "multiple disclosures of its alleged 'trade secrets' with no confidentiality protections in place vitiates any trade secret claim as it applies to Naujok" (Dkt. 10-1 at 14) fails for this same reason.

## 2. The Agreements are Not Void

Naujok's argument that the provisions at issue are void as illegal restraints on trade that violate California Business and Professions Code Section 16600 ("Section 16600") (Dkt. 10-1 at 15) is an apparent attempt to push back the tide of case law recognizing that a breach of contract claim involving trade secrets – and particularly claims resting on breach of confidentiality provisions – can survive under Section 16600. As this Court recognized six months ago:

> Accordingly, 'courts have repeatedly held a former employee may be barred from soliciting existing customers to redirect their business away from the former employer and to the employee's new business if the employee is utilizing trade secret information to solicit those customers.' " Id. Further, "courts have applied this principle to create a 'trade secret exception' to Section 16600, pursuant to which a non-compete or non-solicitation clause may be valid under Section 16600 if it is necessary to protect a trade secret." Id. (citing *Asset Marketing Systems, Inc. v. Gagnon*, 542 F.3d 748, 758 (9th Cir. 2008)) ("Under California law, non-competition agreements are unenforceable unless necessary to protect an employer's trade secret.") Hence, while the non-solicitation provision in the EULAs may be unenforceable under California law, the provisions which protect ESI's trade secrets may be enforced. As set forth above, Plaintiffs have alleged that the Defendants misused the 24-page document, the VA One Theory manual and VA One User's Guide (See Opp'n to MSJ at 7), all of which Plaintiffs claim are trade secrets.

*ESI Grp. v. Wave Six, LLC*, No. 17-CV-2293 TWR (MSB), 2021 WL 5206136, at *7 (S.D. Cal. Nov. 9, 2021). Consistent with this Court's ruling in *ESI Grp.*, Genasys' breach of contract claim does not allege the Agreements were violated simply because Naujok is *competing* with Genasys, but, instead, alleges Naujok breached the Agreements by *using* Genasys' *confidential, trade secret information* in violation of the Agreements. (Dkt. 1 at ¶ 67 ("Lopez and Naujok have breached the Agreements by, for example, using Protected Information in a manner that was not authorized by Genasys.").) Thus, Section 16600 does not bar Genasys' contract claim.[9]

---

[9] Naujok cites to *Power Integrations, Inc. v. De Lara*, No. 20-CV-410-MMA (MSB), 2020 WL 1467406 (S.D. Cal. Mar. 26, 2020), but in that case, the plaintiff "fail[ed] to show how Defendants used or disclosed confidential information, or otherwise breached the confidentiality contract terms."). That is not the case here.

## C. Trade Secret Misappropriation

Naujok seeks dismissal of Genasys' trade secret claims by arguing that (1) Genasys has failed to allege any trade secret with sufficient particularity, (2) that Genasys' Protected Information are not trade secrets because they have been published, and (3) that Genasys has failed to properly allege that Naujok misappropriated Genasys' trade secrets. (Dkt. 10-1 at 16-22.) These arguments fail.

### 1. Genasys Identified its Trade Secrets with Sufficient Particularity

Naujok's primary argument as to Genasys' trade secret claims is that Genasys has failed to identify any trade secret with "sufficient particularity." (Dkt. 10-1 at 16.) Instead of actually addressing Genasys' allegations with respect to its trade secrets, however, Naujok cites a series of cases that stand, generally, for the proposition that "broad categorical terms" are insufficient to allege trade secrets (Dkt. 10-1 at 18-20), before putting forth the following paragraph, which is the *entirety* of Naujok's argument on this point:

> Here, Plaintiff relies on the same terms to define its trade secrets, including "important information regarding their industry needs" (Confidential Client Data), some purported proposed Product Modifications, the customer list (Customer Network), general "pricing of [Genasys Products]"(Pricing Information), information in an Army presentation, and other broadly defined categories of information.

(Dkt. 10-1 at 19); *Isturiz v. Garland*, 860 F. App'x 489, 493 (9th Cir. 2021) ("undeveloped arguments are waived").[10]

---

[10] Naujok cites *Vendavo, Inc. v. Prixe f(x) AG*, and suggests that it is particularly instructive because "it dismissed allegations nearly identical to those on which Plaintiff relies . . . ." (Dkt., 10-1 at 19.) This is false. The Plaintiff in *Vendavo* asserted patent infringement claims and then alleged misappropriation of trade secrets that "include information not expressly covered by its patents." *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *3 (N.D. Cal. Mar. 23, 2018). The *Vendavo* court naturally rejected this all-encompassing catchall (albeit with leave to amend). But rather than supporting Naujok's position, the *Vendavo* decision recognized that information such as customer lists "*may* qualify as protectable trade secrets . . . ." *See id.* at *3 (emphasis in original). But the plaintiff in that case had not referred to information such as customer lists in such a fashion so as to suggest the plaintiff "has a basis to believe" they were actually misappropriated. *See id.* However, Genasys' Complaint alleges specific bases for the misappropriation it asserts. (Dkt. 1 at ¶¶ 50–54, 74, 75, 86, 87.) Instead of supporting Naujok's position, *Vendavo* creates

Naujok's apparent contention that he is unable to discern what Genasys' trade secrets are is belied by the allegations in the Complaint. For example, with respect to the Army Confidential Presentation Materials, Genasys makes the following specific, detailed factual allegations about a *specific PowerPoint*:

> For instance, on May 8, 2019, the United States Army held a programmatic review with Genasys in which the Army made a presentation to Genasys regarding the Army's use of the Legitimate Genasys Products and, in particular, the various vehicles and ships (referred to in the AHD Industry as "Platforms") on which the Legitimate Genasys Products are mounted.
>
> After the completion of the May 8, 2019 programmatic review, the Army provided a hard copy of certain slides shown in its presentation to Genasys that included Confidential Client Data.
>
> These slides were prepared specifically for and shared exclusively with Genasys ("Army Confidential Presentation Materials").

(Dkt. 1 at 32-34.) Instead of addressing these allegations, Naujok simply ignores them and suggests that he is unable "ascertain at least the boundaries within which the secret lies." (*See* Dkt. 10-1 at 18 (citation and quotation omitted).) Naujok's argument should be flatly rejected; this is precisely the type of information that has long been recognized as a trade secret. *See, e.g., Henry Schein, Inc. v. Cook*, 191 F. Supp. 3d 1072, 1077 (N.D. Cal. 2016) ("Customer information such as sales history and customer needs and preferences constitute trade secrets." (emphasis added)).

In order to survive a motion to dismiss a trade secret claim, a plaintiff need only identify a single trade secret. *See InteliClear, LLC v. ETC Glob. Holdings*, Inc., 978 F.3d 653, 659 (9th Cir. 2020) ("InteliClear's burden is only to identify at least one trade secret with sufficient particularity to create a triable issue."); *Woodall v. Walt Disney Co.*, No. CV 20-3772-CBM-(EX), 2021 WL 4442410, at *4 (C.D. Cal. Aug. 5, 2021) (applying *InteliClear* to Rule 12(b)(6) motion). Genasys has accomplished that here with respect to the Army Confidential Presentation Materials, and Naujok's Motion should be denied on this basis alone. Nevertheless, and despite Naujok's generic protestations to the contrary, Genasys has sufficiently identified its other trade

a juxtaposition demonstrating why Naujok's Motion should be denied.

Case No.: 3:22-CV-00152-TWR-BLM

secrets as well.[11] Genasys easily meets the bar set by *InteliClear, LLC* and the Motion should be denied.[12]

## 2. Genasys' Trade Secret Information is Not Publicly Available

Naujok next argues that "Genasys' purported trade secrets, including any product descriptions, dimensions, and pricing became a matter of public record when it became a GSA-approved supplier." (Dkt. 10-1 at 20.) Naujok also argues that "Genasys itself publishes information regarding its 'Customer Network.'" (*Id.*)[13] These arguments are based on extraneous materials Naujok attempts to get in through judicial notice in his improper Request, which, as explained above, should be denied.

---

[11] *Compare* Dkt. 1 at ¶¶ 25–27 (confidential Genasys pricing information), *with Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1455, 125 Cal. Rptr. 2d 277, 287 (2002) ("Cases have recognized that information related to cost and pricing can be trade secret."); *compare* Dkt. 1 at ¶¶ 11–13, 30 (Genasys proposed product modifications), *with Sennco Sols., Inc. v. Mobile Techs., Inc.*, No. 3:20-CV-1426-JR, 2021 WL 463436, at *3 (D. Or. Feb. 9, 2021) ("[Defendant] knows that [Plaintiff's] trade secret lies with those features of a prototype of a device [Plaintiff] shared with [Defendant] on September 15 and 16, 2008. At this early stage, that is all that is required for the litigation to proceed."); *compare* Dkt. 1 at ¶¶ 23, 24 (Genasys' Customer Network, developed over "years"), *with Spice Jazz LLC v. Youngevity Int'l, Inc.*, No. 19-CV-0583-BAS-DEB, 2020 WL 6484640, at *4 (S.D. Cal. Nov. 4, 2020) ("Courts have regarded customer information that requires time and effort to gather as protected trade secrets, unlike customer information that anyone can easily access."). These allegations are sufficient to withstand Naujok's Motion. *See T3 Micro, Inc. v. SGI Co.*, CV 09-08783 SJO, 2010 WL 11597603, at *4 (C.D. Cal. July 28, 2010) ("Plaintiffs allege that Defendants misappropriated 'product designs, design specifications, original inventions, improvements, molds and tooling, customer/ vendor/distributor/client lists, and manufacturing processes for [Plaintiffs' Hair Products].' These contentions, although somewhat conclusory, sufficiently outline 'the boundaries within which the secret lies.' Thus, Plaintiffs sufficiently plead the existence of subject matter which is capable of protection as a trade secret." (citation omitted)).

[12] *InteliClear, LLC* also clarified that at the pleading stage, trade secret plaintiffs are permitted to leave open the possibility of expanding their identifications as the case proceeds. *See InteliClear,* , 978 F.3d at 659 ("At this stage, particularly where no discovery whatsoever had occurred, it is not fatal to InteliClear's claim that its hedging language left open the possibility of expanding its identifications later.").

[13] Despite couching this argument as a basis to dismiss the *entirety* of Genasys' trade secret claims, Naujok's arguments on this point fail to address either the Army Confidential Presentation Materials or the proposed product modifications, *See InteliClear*, 978 F.3d at 659 ("InteliClear's burden is only to identify at least one trade secret with sufficient particularity to create a triable issue.").

Nevertheless, even if the Court considers these extraneous materials, Naujok's argument still fails. With respect to product pricing Naujok contends is available on the GSA website, even a cursory review of these screenshots reveals that these are not posts from Genasys revealing *Genasys' pricing*, but are instead posts by third parties reselling Genasys' products. (Dkt. 10-2 at Ex. B.)

With respect to Genasys' Customer Network, the fact that Genasys publicly disclosed some of its customers, as it acknowledges in its Complaint (*see* Dkt. 1 at ¶ 27), does not mean that it has publicly disclosed all of its Customer Network. *See Cedars Sinai Med. Ctr. v. Quest Diagnostic Inc.,* 2018 WL 2558388, at *5 (C.D. Cal. Feb. 27, 2018) ("The Court accepts that Cedars–Sinai publicly disclosed some information about its research of IBS diagnostic techniques, but cannot conclude, on a motion to dismiss, that Cedars–Sinai disclosed *everything* about its research in IBS diagnostics." (emphasis in original)). Indeed, nowhere in the Motion does Naujok contend that *all* of Genasys' customers have been disclosed. And the question of whether a party's efforts to maintain the secrecy of its trade secrets are, in fact, "reasonable'" is an issue for the trier of fact and therefore not the appropriate subject of a 12(b) motion. *See Workplace Techs. Rsch.*, 2021 WL 4895977, at *22.

### 3. Genasys Has Sufficiently Alleged Misappropriation

Naujok's final argument on Genasys' trade secrets claim is that Genasys has failed to allege that Naujok misappropriated any of Genasys' trade secrets. (Dkt. 10-1 at 20-22.) Naujok baldly makes this argument while ignoring the allegations in the Complaint. As such, the argument should be rejected.

"Under DTSA and CUTSA, 'misappropriation' is defined as either (1) the '*[a]cquisition* of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means,' or (2) the '*[d]isclosure or use* of a trade secret of another without express or implied consent." *Carl Zeiss Meditec, Inc. v. Topcon Med. Sys., Inc.*, 2021 WL 1186335, at *6 (N.D. Cal. Mar. 1, 2021) (emphasis in original). Genasys alleged that Naujok prepared Vector Acoustic's

Marketing Materials *using* the Army Confidential Presentation Materials. (Dkt. 1 at ¶ 53.) Specifically, he prepared a PowerPoint presentation in which he and co-defendant Lopez inserted the Army Confidential Presentation Materials that the Army had provided to Genasys in connection with its programmatic review. (Dkt. 1 at ¶ 54.) He had been expressly informed that "the business, products, practices and techniques" of Genasys' clients are to be held in the strictest confidence and not to be used, published, or disclosed without authorization and, therefore, Naujok understood the Army Confidential Presentation Materials should not be used in this manner. (*See* Dkt. 1 at ¶¶ 22, 42.) The Complaint also alleged Naujok disclosed Genasys' Pricing Information and utilized Genasys' Customer Network in marketing the Faux Genasys Products. (Dkt. 1 at ¶ 74.) Instead of explaining why these allegations are insufficient, Naujok ignores them. The Motion should be denied as to this argument.[14]

## D. Unjust Enrichment

Naujok advances a two-prong attack on Genasys' unjust enrichment claim: that no such cause of action exists under California law, and even if it did, it is preempted by the CUTSA. (Dkt. 10-1 at 22-24.) Both arguments fail.

Whether or not unjust enrichment is a separate cause of action or a "quasi-contract claim seeking restitution," Genasys' claim survives Naujok's Motion because the label of the claim does not preclude the Court from considering its merits. *See Elderson v. Travel Insured International, Inc., et al*, No.: 21-cv-323-WQH-AGS, 2021 WL 4334075, at *3 n.1 (S.D. Cal. Sept. 23, 2021) ("When a plaintiff

---

[14] Though not developed anywhere in his Motion, in Footnote 2, Naujok claims "[t]here is a serious question as to whether Plaintiff even owns the trade secrets as its Complaint admits that Lopez is listed as the Inventor on a relevant patent." (Dkt. 10-1 at 17 n.2.) But Lopez's designation as Inventor on a number of patent applications has no effect on Genasys' trade secret claims; which, of course are separate from any patent infringement Naujok may have participated in, Moreover, the Complaint does not identify Lopez as the Applicant or the Assignee of Genasys' patents. Furthermore, as alleged in the Complaint, Lopez agreed that any Inventions made by him during his employment "are the sole property of Genasys[.]" (Dkt. 1 at ¶ 15.) If all this were not enough, ownership in a trade secret claim relates to possessory rights rather than fee simple ownership. *See e.g., BladeRoom Grp. Ltd. v. Facebook, Inc.,* 219 F. Supp. 3d 984, 990 (N.D. Cal. 2017).

alleges unjust enrichment, a court may construe the cause of action as a quasi-contract claim seeking restitution. The label does not preclude the Court from considering the merits of the claim."). Here, Genasys pled its unjust enrichment cause of action as an alternative form of relief in the event Naujok claimed that no enforceable contract exists with Genasys or that there has been no misappropriation of trade secrets, which Naujok has done in his Motion. As such, the claim is proper and should not be dismissed. *See In re Sony Gaming Networks & Customer Data Sec. Breach Litig.,* 996 F. Supp. 2d 942, 985 n.37 (S.D. Cal. 2014) (recognizing that an unjust enrichment claim may be pled in the alternative where one party asserts that the contract governing the dispute is invalid or the contract does not cover the subject matter at issue.").

Further, it is premature to consider whether Genasys' unjust enrichment claim is preempted by the CUTSA. In particular, it is improper to rule on the CUTSA's preemptive effect on common law theories, such as unjust enrichment, where no factual determination has been made as to the existence of trade secrets. *See FunCat Leisure Craft, Inc. v. Johnson Outdoors, Inc.*, 02:06-cv-0533-GEB-GGH, 2006 WL 8458932, at *3 (E.D. Cal. July 25, 2006) (denying a motion to dismiss based on preemption arguments and citing *Callaway Golf Company v. Dunlop Slazenger Group Americas, Inc.,* 318 F. Supp. 2d 216 (D. Del. 2004) for the proposition that "until it is shown that the information allegedly misappropriated is entitled to trade secret protection, it is premature to rule whether the common law claims are preempted under CUTSA and if a fact finder were to find that the allegedly misappropriated information was a trade secret, then the common law claims for conversion and unjust enrichment would be preempted by CUTSA.") (internal brackets removed)).

### E. California Business & Professions Code § 17200

Naujok again sprays multiple arguments to challenge Genasys' sixth cause of action: (1) Genasys' Section 17200 claim is preempted by its CUTSA claim; (2)

Genasys fails to identify which prong of the UCL upon which its claim proceeds; and (3) the claim must be pleaded with particularity because it alleges fraud and only includes generic allegations. (Dkt. 10-1 at 24-25.) All three arguments fail.

Genasys' Section 17200 claim is not preempted by the CUTSA. The CUTSA itself states that "Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets." Cal. Civ. Code § 3426.7(a)(1). The California Court of Appeal has interpreted Section 3426.7(a)(1) to reject preemption of a Section 17200 claim by the CUTSA:

> The UTSA, specifically section 3426.7, subdivision (a), expressly provides that the Act 'does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.' Thus, even if Courtesy's customer list would not qualify as a 'trade secret' under section 3426.1, the unfair and deceptive practices of employees in stealing Courtesy's customers should have been enjoined under Business and Professions Code section 17200 et seq.

*Courtesy Temp. Serv., Inc. v. Camacho*, 222 Cal. App. 3d 1278, 1291 (Ct. App. 1990). Extensive case law, including from this District, supports the *Comacho* holding. *See DJO Glob., Inc. v. Glader*, No.: 3:16-cv-02208-CAB, 2016 WL 11622009, at *8 (S.D. Cal. Dec. 22, 2016) ("Notably, 'it is well-settled that misappropriation of trade secrets in violation of CUTSA can form the predicate for an unfair competition claim under the UCL.'"); *see also Hanger Prosthetic & Orthotics, Inc. v. Capstone Orthopedic, Inc.*, 556 F. Supp. 2d 1122, 1139 (E.D. Cal. 2008) (finding that trade secret misappropriation supports a UCL claim of "unlawful" business practices); *U.S. Legal Support, Inc. v. Hofioni*, CIV. S–13–01770 LKK/AC, 2013 WL 6844756, at *14 (E.D. Cal. Dec. 20, 2013) ("[T]he cases are legion holding that a former employee's use of confidential information obtained from his former employer to compete with him and to solicit the business of his former employer's customers, is regarded as unfair competition." (citation omitted)).[15]

---

[15] Genasys notes that there is case law reaching the opposite conclusion. *See, e.g., Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 241 (2010).

Nevertheless, because Fed. R. Civ. P. 8(a)(3) allows for claims to be brought in the alternative, it is not appropriate to adjudicate the potential preemptive effect of the CUTSA in relation to Genasys' Section 17200 claims at this time. Where it is possible that the trier of fact will determine that some or all of the information alleged to have been misappropriated do not constitute trade secrets, but the alleged actions nevertheless constitutes unfair competition, it is premature to make a ruling as to preemption. *See Snelling Servs., LLC v. Diamond Staffing Servs., Inc.*, WL 3947175, at *17 (Cal. Ct. App. July 30, 2013) (unpublished) ("[I]t is possible that the trier of fact will ultimately determine that some or all of the information alleged to have been misappropriated did not constitute trade secrets, . . . [and] it would be premature for us to determine here that CUTSA necessarily preempts the unfair competition cause of action. In the circumstances, we conclude the determination whether the same nucleus of facts underlies both the unfair competition and the trade secrets claims should await trial."); *Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.*, No. 11–CV–1890–H, 2011 WL 5025178, at *10 (S.D. Cal. Oct. 21, 2011) ("At this point in the case, the status of the information is merely a matter of allegation and until the distinction is made between [plaintiff's] allegedly misappropriated trade secret information and its confidential or non-confidential proprietary non-trade secret information, the question of preemption should not be addressed.").

Next, Naujok argues that Genasys' UCL claim "fails because it does not explain which of the three prongs (i.e., unlawfulness, unfairness, or fraud) Naujok violated . . . ." (Dkt. 10-1 at 25.) Section 17200 plaintiffs are not, however, required to tether their Complaint to a particular prong of Section 17200. *See Lepton Labs, LLC v. Walker*, 55 F. Supp. 3d 1230, 1242 (C.D. Cal. 2014) ("While Defendants fault Plaintiffs for not tethering their claim to a particular UCL prong, the Court finds nothing wrong with Plaintiffs' pleading. By including all three prongs in their UCL claim, Plaintiffs have put Defendants on notice that they intend to pursue all possible avenues of UCL liability. Nothing in California case law requires Plaintiffs to

unnecessarily cabin their claim to just one UCL prong. And for good reason. The Act prohibits '*any* unlawful, unfair or fraudulent' business practices—not just one or the other." (emphasis in original)). Notably, the only case Naujok cites for his argument does not actually support his contention that identification of specific UCL prongs is required. *See Missud v. Oakland Coliseum Joint* Venture, No. 12-02967 JCS, 2013 WL 3286193, at *7 (N.D. Cal. June 27, 2013) (alleging UCL claim under all three prongs).

Lastly, in arguing that Genasys' Section 17200 claims are insufficiently pled, Naujok wrongfully claims that "Plaintiff has alleged Naujok made knowingly false statements . . . ." (Dkt. 10-1 at 25.)[16] Naujok again relies on mischaracterizing Genasys' allegation to support his argument. Genasys does not complain of fraud; rather, it alleges that misinformation has been spread to Customers. (Dkt. 1 at ¶ 100.) This constitutes "untrue or misleading advertising" and is individually actionable as "unfair competition" under Section 17200. *See* Cal. Bus. & Prof. Code § 17200. Thus, Genasys' claim is actionable regardless of whether the individual (Naujok) has fraudulent intent.[17] As such, Naujok's attempt to transform Genasys' Section 17200 claim into a fraud claim falls short.

---

[16] Naujok appears to concede that the other allegations underlying Genasys' Section 17200 claim (*i.e.* using Genasys' confidential, proprietary information to compete) do not sound in fraud and therefore, are not subject to a heightened pleading standard under Rule 9(b). *See Planet Coffee Roasters, Inc. v. Dam*, No. SACV 09–00571–MLG 2009 WL 2486457, at *4 (C.D. Cal. Aug. 12, 2009) ("[O]nly allegations of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b). Allegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." (citation and quotation omitted)).

[17] Further, this conduct is independently actionable under Section 17200 as an "act" prohibited by Section 17500 because it "concern[s] any circumstance or matter of fact connected with the proposed performance or disposition" of Vector Acoustic's product offering (i.e., that the Faux Genasys Products do not infringe on Legitimate Genasys Products' patents). Although such activity constitutes "unfair competition" under the express terms of the statute, a claim that a party engaged in misleading advertising does not necessarily sound in fraud. *See Threshold Enterprises Ltd. v. Functional Brands, LLC*, No. C07-1400 BZ, 2007 WL 1747122, at *1 (N.D. Cal. June 18, 2007) ("I do not read the Section 17500 claim as alleging a claim for fraud or as sounding in fraud. It alleges that defendant adopted a name it knew or should have known would mislead the public.").

Case No.: 3:22-CV-00152-TWR-BLM

## F. Naujok's Request for a More Definite Statement Should be Denied

Genasys is not required to supplement its Complaint with a more definite statement. "A Rule 12(e) motion is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted, *i.e.*, so vague that the defendant cannot begin to frame a response." *C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1170, 1191 (E.D. Cal. 2010). And "[t]he Court must deny the motion if the complaint is specific enough to notify defendant of the substance of the claim being asserted." *Id.* "A motion for a more definite statement is used to attack unintelligibility, not mere lack of detail, and a complaint is sufficient if it is specific enough to apprise the defendant of the substance of the claim asserted against him or her." *San Bernardino Pub. Employees Ass'n v. Stout,* 946 F. Supp. 790, 804 (C.D. Cal. 1996)).[18] Naujok's request for a more definite statement should be denied.

## G. Naujok is Not Entitled to Attorney Fees

Naujok's demand for fees and costs under California Code of Civil Procedure section 3426.4 and the DTSA should be denied as it is procedurally and substantively deficient. First, a request for an award of fees under Section 3426.4 "must be brought by motion pursuant to Rule 54(d)(2)." *Indigo Grp. USA, Inc. v. Polo Ralph Lauren Corp.*, No. CV-11-5883-MWF, 2014 WL 12573380, at *3 (C.D. Cal. Mar. 17, 2014). Naujok cannot simply request fees in the body of his memorandum supporting his Motion, as he did here. Second, an award of fees under Section 3426.4 requires a factual showing of subjective bad faith, which has not occurred here. *See Yield Dynamics, Inc. v. TEA Sys. Corp.*, 154 Cal. App. 4th 547, 578 (2007) ("The 'bad faith' contemplated by section 3426.4 means not only that the claim is objectively specious but that the plaintiff acted with *subjective* bad faith. This means that the action or tactic was pursued for an improper motive. That question involves a factual inquiry

---

[18] Importantly, there has been no discovery in this case. *Cf. C.B. v. Sonora Sch. Dist.*, 691 F. Supp. 2d 1170, 1191 (E.D. Cal. 2010) ("The Court may also deny the motion if the detail sought by a motion for more definite statement is obtainable through discovery.").

Case No.: 3:22-CV-00152-TWR-BLM

into the plaintiff's subjective state of mind: Did he or she believe the action was valid? What was his or her intent or purpose in pursuing it?" (cleaned up, but emphasis in original)). As explained in detail above, not only are Genasys' trade secret claims not specious, but they easily state plausible claims and withstand the Motion. Naujok has not asserted a supportable basis for attorney fees.

## IV. CONCLUSION

For the foregoing reasons, Naujok's Motion should be denied.[19]

DATED: April 21, 2022

/s/ _David W. Tufts_

David W. Tufts, Esq.
DENTONS DURHAM JONES PINEGAR P.C.
111 S. Main, Suite 2400,
Salt Lake City, UT 84111
Telephone: (801) 415-3000
Facsimile: (801) 415-3500

Jae K. Park (SBN 234474)
DENTONS US LLP
4655 Executive Dr Ste 700
San Diego, CA 92121
Telephone: (619) 236-1414
Facsimile: (619) 232-8311

_Attorneys for Genasys Inc._

---

[19] If the Court is inclined to grant Naujok's motion at least in part, Genasys requests an opportunity to amend its Complaint to cure the perceived deficiencies.

# CERTIFICATE OF SERVICE

I, David W. Tufts, certify that I caused to be served upon the following counsel and parties of record a copy of the following document(s):

- **PLAINTIFF GENASYS INC.'S OPPOSITION TO DEFENDANT MARCEL NAUJOK'S MOTION TO DISMISS COMPLAINT OR, ALTERNATIVELY, MOTION FOR MORE DEFINITE STATEMENT**

as indicated/listed on the United States District Court, Southern District of California's CM/ECF registered email list in the above-referenced matter:

| | |
|---|---|
| Whitney E. Peterson, Esq.<br>WHITNEY PETERSON & ASSOCIATES<br>1049 S. Mont Blanc Court<br>Midway, Utah 84049<br>Tel:  (619) 885-5430<br>E-mail:  wpeterson@whitneypetersonlaw.com | ***Attorneys for Defendants Vector Acoustics, LLC and Hernan Frederick Lopez*** |
| Tracy A. Warren, Esq.<br>BUCHALTER, a Professional Corporation<br>655 West Broadway, Suite 1600<br>San Diego, CA 92101<br>Tel:  (619) 219-5335<br>E-mail:  twarren@buchalter.com | ***Attorneys for Defendant Marcel Naujok*** |
| Alissa R. Pleau-Fuller, Esq.<br>BUCHALTER, a Professional Corporation<br>500 Capitol Mall, Suite 1900<br>Sacramento, CA 95814<br>Tel:  (916) 945-5170<br>E-mail:  apleaufuller@buchalter.com | ***Attorneys for Defendant Marcel Naujok*** |

Executed on **April 21, 2022,** in Salt Lake City, Utah.

_____
*/s/ David W. Tufts*

US_Active\121299271\V-2