1
2
3
4
5
6
7

8           UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  GENASYS INC., a Delaware corporation, | Case No.:  22-CV-152 TWR (BLM) |
| 12                                      Plaintiff, | **ORDER GRANTING IN PART AND** |
| 13  v. | **DENYING IN PART DEFENDANTS'** |
|     | **MOTIONS TO DISMISS** |
| 14  VECTOR ACOUSTICS, LLC, a | |
| 15  Delaware limited liability company; | (ECF Nos. 10, 11) |
|     HERNAN FREDERICK LOPEZ, an | |
| 16  individual; MARCEL NAUJOK, an | |
|     individual; and DOES 1 through 10. | |
| 17  | |
| 18                                      Defendants. | |

19

20          Presently before the Court is Defendant Marcel Naujok's Motion to Dismiss

21  ("Naujok MTD," ECF No. 10) and Defendants Vector Acoustics, LLC and Hernan

22  Frederick Lopez's Motion to Dismiss.  ("Vector Lopez MTD," ECF No. 11.)  Plaintiff

23  Genasys Inc. ("Genasys") filed an Opposition to each Motion to Dismiss (ECF Nos. 14

24  ("Naujok Opp'n,"), 15 ("Vector Lopez Opp'n")), and Defendants Naujok ("Naujok

25  Reply," ECF No. 17) and Vector Lopez ("Vector Lopez Reply," ECF No. 16) filed Replies.

26  In response to a Supplemental Request for Judicial Notice, (*see* ECF No. 16-1), Plaintiff

27  filed a response.  ("Response," ECF No. 18.)  The Court held a hearing on May 19, 2022.

28  (*See* ECF No. 19.)  Having carefully considered the parties' arguments, the law, and the

pleadings, the Court **GRANTS IN PART AND DENIES IN PART** both Naujok's and Vector Lopez's Motions to Dismiss.

## BACKGROUND[1]

Genasys is a "leader in the Acoustic Hailing Device Industry" (the "AHD Industry"). (ECF No. 1 ("Compl.")  ¶ 9.)  Plaintiff "develops and manufactures large-scale communication systems," for example, "emergency warning systems and public safety mass notification systems that are used by various governmental and commercial organizations." (*Id.*)  Engineers and business development employees "regularly hold confidential product development meetings" to discuss design improvements to Genasys products. (*Id.* ¶ 13.)

Genasys "requires both its engineering employees and its business development employees to sign a Proprietary and Inventions Agreement and other employment agreements." (*Id.* ¶ 14.)  The employment agreements require employees to promptly disclose complete information concerning each and every invention (including a new contribution, concept, idea, development, formula, composition, technique, machine and improvement thereof, or know-how related thereto), discovery, improvement, device, design, apparatus, practice, process, method or product made, developed, perfected, devised, conceived or first reduced to practice by them, either solely or in collaboration with others, during the period of their employment by Genasys, and up to and including a period of one (1) year after termination of employment that relates to the business, produces, practice or techniques of Genasys, or to Genasys' actual or demonstrably anticipated research or development, or resulting from any work performed by them for Genasys. (*Id.*)  The employment agreements further require employees to agree that any and all Inventions made, developed, perfected, devised, conceived or reduced to practice

---

[1]     For purposes of Defendants' Motions, the facts alleged in Plaintiff's Complaint are accepted as true. *See Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007) (holding that, in ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true").

by the employee during the period of employment and any other Inventions made, developed, perfected, devised, conceived or reduced to practice by them during the period of one (1) year after termination of their employment, relating directly or indirectly to the business, products, practices or techniques of Genasys or Genasys' actual or demonstrably anticipated research or development, or resulting from any work performed by them for Genasys, are the sole property of Genasys, and they assigned any and all right title and interest in and to any and all such Inventions to Genasys.  (*Id.* ¶ 15.)  The employment agreements "provide for the recovery of attorneys' fees and costs incurred in any controversy or claim arising out of or relating to the Agreements or breach thereof."  (*Id.* ¶ 16.)

In connection with the use of Genasys products, Genasys receives confidential information from clients, which provides a competitive edge in the industry.  (*Id.* ¶¶ 18–19, 21.)  Genasys limits access to the confidential information and, through the employment agreements, requires its employees to "hold 'customer information' and information relating to 'the business, products, practices and techniques' of its clients in the strictest confidence and not to use, publish, or disclose such information without Genasys' Board of Directors written authorization."  (*Id.* ¶ 22.)

Genasys monitors the pricing of its products and does not publicize the information.  (*Id.* ¶ 25.)  Instead, Genasys "strategically and selectively discloses its prices" and requires, in the employment agreements, employees to maintain the confidence of its business and financial information.  (*Id.* ¶ 27.)

Marcel Naujok worked for Genasys as Vice President of Business Development from June 2013 through October 2018.  (*Id.* ¶¶ 41, 45.)  He signed the employee agreements and thereafter "assumed the confidentiality commitments."  (*Id.* ¶ 42.)  He attended many "Confidential Product Development Meetings"[2] and was very familiar with the "Customer

---

[2]   "[C]onfidential product development meetings [are meetings] in which various design improvements to the Legitimate Genasys Products are proposed and discussed."  (*See* Compl. ¶ 13.)

Network,"[3] "Genasys' Pricing Information,"[4] and "Confidential Client Data."[5]   (*Id.* ¶¶ 43–44.)

After his termination, "Naujok continued to provide various consulting services for Genasys from October 2018 until May 2021."  (*Id.* ¶ 46.)  Throughout the consulting period, Naujok "continued to receive information regarding the Customer Network, Confidential Client Data, Proposed Product Modifications, and other proprietary information of Genasys."  (*Id.*)

Hernan Lopez worked for Genasys as Vice President of Product Development from 2003 through 2019.  (*Id.* ¶¶ 28, 38.)  He also signed the employee agreements and "assumed the confidentiality commitments," (*Id.* ¶ 29), and he attended many Confidential Product Development meetings and was very familiar with the Customer Network, Genasys' Pricing Information, and Confidential Client Data.  (*Id.* ¶¶ 30–31.)

In May 2019, the United States Army made a presentation to Genasys regarding its use of Genasys products and provided a copy of some of the slides to Genasys.  (*Id.* ¶¶ 32–33.)   The Army emailed the presentation slides with the instruction: "This communication may contain information that is confidential in nature and unauthorized use or disclosure is strictly prohibited.  If you are not the intended recipient, kindly reply or call at the number above to alert us. Afterward, please delete this communication in its entirety."  (*Id.* ¶ 35.)  Lopez received a copy of the Army's presentation.  (*Id.* ¶ 37.)

In June 2019, Lopez terminated his employment with Genasys.   (*Id.* ¶ 38.)  Following his departure, Lopez retained the Army presentation slides as well as

---

3       "Over the years, Genasys has developed an intricate network of customers throughout the world that consists of both resellers and end users of Legitimate Genasys Products (Genasys' "Customers"). This network, and the tangible manifestation of this network in the form of customer and prospective customer lists and contact information [] holds significant independent value."  (*See* Compl. ¶ 23.)

4       "Genasys carefully monitors the pricing of the Legitimate Genasys Products."  (*See* Compl. ¶ 25.)

5       "In these confidential [meeting] settings, clients share important information regarding their industry needs."  (*See* Compl. ¶ 19.)

"information related to Genasys' Pricing Information, Customer Network, Confidential Client Data, and other proprietary information of Genasys."  (*Id.* ¶ 39.)

In January 2020, Lopez founded Vector Acoustics ("Vector").  (*Id.* ¶ 47.)  Naujok is "currently assisting Lopez with respect to" Vector's business."  (*Id.* ¶ 49.)  Vector describes its business as "Design and Manufacturing of Loudspeakers and Audio Systems for Challenging Applications."  (*Id.* ¶ 48.)  Vector's products appear to be a "mere reproduction of Legitimate Genasys Products with the addition of the Proposed Product Modifications and/or superficial alterations."  (*Id.* ¶ 50.)

Genasys believes that, in designing Vector's products, Lopez and Naujok "relied on Genasys' Confidential Client Data, including, but not limited to, the Army Confidential Presentation Materials, and Proposed Product Modifications, as well as other proprietary information of Genasys."  (*Id.* ¶ 51.)  For example, Lopez and Naujok utilized the Army's slides, which had been provided to Genasys, in a presentation with at least one of Genasys' international customers.  (*Id.* ¶ 54.)  Further, Vector has been spreading misinformation about Genasys' products to Genasys' customers, including that Genasys' patents on their products have expired.  (*Id.* ¶ 55.)

Genasys asserts the following claims: (1) breach of contract against Lopez; (2) breach of contract against Naujok; (3) violation of California's Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§ 3426 *et seq.*; (4) violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §§ 1836 *et seq.*; (5) unjust enrichment; and (6) Unfair Business Practices ("Section 17200"), California Bus. & Prof. Code §§ 17200 *et seq.*  (*See generally* Compl.)

Defendant Naujok moves to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, moves for a more definite statement pursuant to Federal Rule of 12(e), as well as a request for judicial notice pursuant to Federal Rule of Evidence 201.  (Naujok MTD at 11–12.)  Defendants Vector and Lopez filed an independent motion moving to dismiss all claims pursuant Federal Rule of Civil Procedure 12(b)(6) and a request for judicial notice.  (Vector Lopez MTD at 7, 25.)

# LEGAL STANDARDS

## I.   Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  "A district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) is proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Id.* at 1242 (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In other words, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Id.* at 679 (second alteration in original) (quoting Fed. R. Civ. P. 8(a)(2)).

/ / /

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "A district court does not err in denying leave to amend where the amendment would be futile." *Id.* (citing *Reddy v. Litton Indus.*, 912 F.2d 291, 296 (9th Cir. 1990), *cert. denied*, 502 U.S. 921 (1991)).

## II.     Federal Rule of Civil Procedure 12(e)

Under Federal Rule of Civil Procedure 12(e), "[a] party may move for a more definite statement" only when a complaint "is so vague or ambiguous that the party cannot reasonably prepare a response."  *See* Fed. R. Civ. P. 12(e).  A motion under Rule 12(e) "must point out the defects complained of and the details desired."  *See id.*  Although "[w]hether to grant a Rule 12(e) motion is within the discretion of the trial court[,]" *see Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1154 (N.D. Cal. 2011) (quoting *Babb v. Bridgestone/Firestone*, 861 F. Supp. 50, 52 (M.D. Tenn. 1993)), "[s]uch motion [is] not favored by the courts since pleadings in federal courts are only required to fairly notify the opposing party of the nature of the claim."  *See id.* (first and third alterations in original) (quoting *Resolution Trust Corp. v. Dean*, 854 F. Supp. 626, 629 (D. Ariz. 1994)).  Consequently, a Rule 12(e) motion "should not be granted unless the defendant cannot frame a responsive pleading."  *See id.* (quoting *Famolare, Inc. v. Edison Bros. Stores, Inc.,* 525 F. Supp. 940, 949 (E.D. Cal. 1981)).

## ANALYSIS

## I.     Judicial Notice

Defendants all filed Requests for Judicial Notice ("Naujok RJN," "Vector Lopez RJN," ECF Nos. 10-3, 11-2 respectively.)  "In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice."  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).  A court may take judicial notice of an adjudicative fact that

"is not subject to reasonable dispute" because it is "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201. Federal Rule of Evidence 201 "allows the court to take judicial notice of certain items without converting the motion to dismiss into one for summary judgment." *Rex v. Chase Home Fin. LLC*, 905 F. Supp. 2d 1111, 1124 (C.D. Cal. 2012); *see also Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (stating that when ruling on a motion to dismiss, courts may consider "matters of which a court may take judicial notice").

Defendants are requesting that the Court accept as true information contained within the screenshots from the websites of Genasys and the General Services Administration ("GSA"), which is an independent government agency, (Naujok RJN at 2), as well as copies of Plaintiff's press releases and Form 10-K filings with the SEC. (Vector Lopez RJN 4–6.) Plaintiff opposes all requests. (Naujok Opp'n at 6–9, Vector Lopez Opp'n at 7–9.)

### A.   *Genasys Website*

"Private corporate websites, particularly when describing their own business," are a source whose accuracy is reasonably questioned. *See Spy Optic, Inc. v. Alibaba.Com, Inc.*, 163 F. Supp. 3d 755, 763 (C.D. Cal. 2015). Even if a court judicially notices a party's website, the court is simply taking "as true that the website exists and makes certain representations about the company to the public." *Woodside Invs., Inc. v. Complete Bus. Sols. Grp., Inc.*, No. 220CV00042JAMCKD, 2020 WL 869206, at *2 (E.D. Cal. Feb. 21, 2020). The court does not "assume the veracity of any of the representations the website contains." *Id.* "Federal courts considering the issue have expressed skepticism as to whether it is appropriate to take judicial notice of information or documents appearing on websites that are created and maintained by a party to the litigation." *Gerritsen v. Warner Bros. Ent. Inc.*, 112 F. Supp. 3d 1011, 1030 (C.D. Cal. 2015).

The Court therefore **DENIES** all requests for judicial notice of Genasys website screenshots. First, even though Naujok appears to attach SEC filings and an investor

presentation from the Genasys website, he provided only a link to the general website where he allegedly found the documents and thus there is no method of authentication for the Court to ensure the documents' accuracy. *See Hsieh v. FCA US LLC*, 440 F. Supp. 3d 1157, 1161 (S.D. Cal. 2020) ("[N]umerous cases have denied judicial notice of a party's documents because they are not a source 'whose accuracy cannot reasonably be questioned.'").  Second, Vector Lopez attaches pages displaying customers of Genasys. (*See* Vector Lopez RJN at 2.)  Plaintiff, however, admits that it has published at least some of the names of customers, (Vector Lopez Opp'n at 8)—the names themselves, however, are irrelevant to the Court.

### B.   *GSA Website*

"Under Rule 201, the court can take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet," such as websites run by governmental agencies." *Gerritsen*, 112 F. Supp. 3d at 1033.

#### 1.   *Naujok*

None of the links provided by Naujok appear to lead to the intended webpage as they do not match the screenshots provided.  The Court therefore **DENIES** Naujok's request for judicial notice of GSA links.  They are irrelevant, not legible, and lack any clear link to assist the Court at the Motion to Dismiss stage.  *See Gerritsen*, 112 F. Supp. 3d at 1030 (denying judicial notice of information in press releases and publicly available news articles because it was irrelevant for purposes of the motion to dismiss).

#### 2.   *Vector Lopez*

The link provided by Vector Lopez appears to lead to the intended webpage. Nonetheless, the information provided is not relevant.  As already noted, although Plaintiff admits that it has published at least some of the names of customers, (Vector Lopez Opp'n at 8), the names themselves are irrelevant.  Thus, the Court **DENIES** Vector Lopez's request for judicial notice of GSA links.

/ / /

/ / /

9

### C.      Plaintiff's Press Releases

"Courts may take judicial notice of publications introduced to 'indicate what was in the public realm at the time, not whether the contents of those articles were in fact true.'" *Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d 954, 960 (9th Cir. 2010) (quoting *Premier Growth Fund v. Alliance Capital Mgmt.*, 435 F.3d 396, 401 n.15 (3d Cir. 2006)) (citing *In re Google Assistant Priv. Litig.*, 546 F. Supp. 3d 945, 956 (N.D. Cal. 2021)).   Nonetheless, the Court **DENIES** Vector and Lopez's request for judicial notice of Plaintiff's press releases because they are irrelevant to the instant Motion to Dismiss.  *See Gerritsen*, 112 F. Supp. 3d at 1030 (denying judicial notice of information in press releases and publicly available news articles because it was irrelevant for purposes of the motion to dismiss).

### D.      Form 10-Ks

"Courts can consider securities offerings and corporate disclosure documents that are publicly available."  *Gerritsen*, 112 F. Supp. 3d at 1031; *see also Wynn v. Chanos*, 75 F. Supp. 3d 1228, 1235 (N.D. Cal. 2014) ("SEC forms such as a Form 8-K or Form 10-K are matters of public record and may be subject to judicial notice.").   A court, however, only takes judicial notice of the "content of the SEC Forms [] and the fact that they were filed with the agency.  The truth of the content, and the inferences properly drawn from them, however, is not a proper subject of judicial notice under Rule 201."  *Gerritsen*, 112 F. Supp. 3d at 1031 (quoting *Patel v. Parnes,* 253 F.R.D. 531, 546 (C.D. Cal. 2008)). While the 10-K filings are proper for judicial notice, they are not relevant to the Court's analysis. Accordingly, the Court **DENIES** Vector Lopez's request for judicial notice of Genasys' Form 10-Ks filed with the SEC.

### E.      Supplemental Request for Judicial Notice

As a part of their Reply, Vector Lopez included a Supplemental Request for Judicial Notice, ("RJN 2," ECF No. 16-1), in which Defendants request the Court judicially notice

/ / /

/ / /

a press release and Plaintiff's price list from Sourcewell's website.[6]  (*Id.* at 2.)  For the foregoing reasons, *see supra* Sections I.B.2 and I.C, the Court **DENIES** Vector Lopez's supplemental request.  Accordingly, the Court need not address Plaintiff's Response.

## II.  Breach of Contract

To have a viable breach of contract claim, there must be (1) a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff.  *Coles v. Glaser*, 2 Cal. App. 5th 384, 391 (2016).  It is "absolutely essential to plead the terms of the contract either in *haec verba* or according to legal effect."  *Twaite v. Allstate Ins. Co.*, 216 Cal. App. 3d 239, 252, *as modified* (Dec. 7, 1989); *see also Kaar v. Wells Fargo Bank, N.A.,* No. C 16-01290 WHA, 2016 WL 3068396, at *1 (N.D. Cal. June 1, 2016) ("To claim a breach of contract in federal court the complaint must identify the specific provision of the contract allegedly breached by the defendant.").  Although a plaintiff is not required to "attach the contract or recite the contract's terms verbatim," they "must identify with specificity the contractual obligations allegedly breached by the defendant."  *Kaar*, 2016 WL 3068396, at *1 (quoting *Misha Consulting Grp., Inc. v. Core Educ. & Consulting Sol., Inc.*, 2013 WL 6073362, at *1 (N.D. Cal. Nov. 15, 2013)).

California Business and Professions Code Section 16600 ("Section 16600") states, "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."  Cal. Bus. & Prof. Code § 16600.  Section 16600 codifies California's "strong interest in protecting its employees from noncompetition agreements."  *See Advanced Bionics Corp. v. Medtronic, Inc.*, 29 Cal. 4th 697, 707 (2002), *as modified* (Mar. 5, 2003); *see also Power Integrations, Inc. v. De Lara*, No. 20-CV-410-MMA (MSB), 2020 WL 1467406, at *8 (S.D. Cal. Mar. 26, 2020) ("California law generally disfavors restrictive covenants.").  The law further ensures "that every citizen shall retain the right to pursue any lawful

---

[6]     Sourcewell is a service cooperative created by the Minnesota legislature as a local unit of government.

employment and enterprise of their choice." *Edwards v. Arthur Andersen LLP*, 44 Cal. 4th 937, 946 (2008) (*quoting Metro Traffic Control, Inc. v. Shadow Traffic Network*, 22 Cal. App. 4th 853, (1994)); *see also Power Integrations,* 2020 WL 1467406, at *8 ("California's clear statutory language of § 16600 is coupled with longstanding case law supporting the primacy of employees to pursue the work of their choice.").

Defendants Vector Acoustics and Lopez move to dismiss Plaintiff's breach of contract cause of action on the grounds that it is void under Section 16600 or, in the alternative, preempted by CUTSA, *see infra* Section VI.A, or impermissibly vague. (Vector Lopez MTD at 8, 12 n.2).

Defendant Naujok, on the other hand, moves to dismiss Plaintiff's breach of contract claim because (1) "Plaintiff fails to specify the actual 'Agreements' Naujok purportedly breached;" (2) Naujok's employment was terminated in October 2018, and thus any agreements concerning his consulting work would "not fall within Plaintiff's definition of 'Agreements'" under the operative Complaint; (3) the Complaint "generically describes the 'Agreements' to include a set of undefined agreements without titles;" (4) Plaintiff failed to attach copies of the "Agreements" or "to allege their terms in sufficient detail;" and (5) Plaintiff fails to allege "facts to support its allegation that it has performed its end of the bargain." (Naujok MTD 1 at 13–14.)  Plaintiff counters that it does in fact identify the "specific contractual commitments that are at issue" and outlines the specific obligations that Naujok breached.  (Naujok Opp'n at 9–10.) [7]  Additionally, given that Genasys provided Naujok with employment, it contends that it performed its end of the bargain.  (*Id.* at 11.)

Plaintiff does not adequately state a claim for breach of contract.  Plaintiff alleges the existence of contracts in the form of employment agreements.  (Compl. ¶¶ 14–15, 65.) Plaintiff specifies how Defendants allegedly breached the employment agreements by

---

[7]     In many instances, Plaintiff used the same arguments in both opposition briefs.  For ease of reference, only one opposition brief is cited when they are identical.

detailing the manner in which they used the confidential information in creating products and marketing and distributing those products.  (*Id.* ¶¶ 50–56.)  Plaintiff, however, fails to allege a contract that is relevant to the breach Genasys alleges.   The employment agreements referenced describe signatories' obligations, detailed *supra* Background, instruct employees to simply "disclose complete information," and note that any inventions are the "sole property of Genasys."  (*Id.* ¶¶ 14–15.)  The breach complained of, however, concerns Defendants' alleged "use of Protected Information."   (*Id.* ¶¶ 60, 67.) Accordingly, the Court cannot find the required elements to constitute a breach of contract claim.

Even if the employment agreements as alleged could be found to constitute a "contract" for purposes of Plaintiff's claims, they would not be valid under Section 16600. Defendant Naujok contends that the "Alleged Agreements" contain "impermissible and unlawful[ly] overbroad intellectual property assignment[]" provisions and thus, even if properly pled, are void and unenforceable.  (Naujok MTD at 15–16.)  Defendants Vector and Lopez echo this contention.  (Vector Lopez MTD at 10.)  Pursuant to Section 16600, Defendants are correct.  Plaintiff seeks to clarify that it is "not alleg[ing] the Agreements were violated simply because Naujok is *competing* with Genasys, but, instead, alleg[ing] Naujok breached the Agreements by *using* Genasys' *confidential, trade secret information* in violation of the Agreements."  (Naujok Opp'n at 12) (emphasis in original).  Plaintiff's clarification highlights both a deficiency in its Complaint and a conflation of a tortious wrong with a breach of contract.  The way in which the employment agreements were allegedly breached is not relevant if the contract itself is void.[8]

---

[8]    *See Ret. Grp. v. Galante*, 176 Cal. App. 4th 1226, 1238 (2009) ("We distill from the foregoing cases that section 16600 bars a court from specifically enforcing (by way of injunctive relief) a *contractual* clause purporting to ban a former employee from soliciting former customers to transfer their business away from the former employer to the employee's new business, but a court may enjoin *tortious* conduct (as violative of either the Uniform Trade Secrets Act and/or the Unfair Competition Law) by banning the former employee from using trade secret information to identify existing customers, to facilitate the solicitation of such customers, or to otherwise unfairly compete with the former employer.  Viewed in this

The Court finds the employment agreements are unnecessarily broad and thus violate Section 16600 and are not enforceable. *See Armorlite Lens Co. v. Campbell*, 340 F. Supp. 273, 275 (S.D. Cal. 1972) ("An Agreement, such as the one involved in the instant case, which requires a former employee to turn over to his former employer *all* new ideas and concepts concerning the field of work or the products of the employer which occur to him within one year after the termination of his employment, is unnecessarily broad." (emphasis in original)).  Plaintiff's employee agreements are similarly broad to those the court encountered in *Armorlite*, including a continuing obligation for one-year post-employment that encompasses all new ideas and concepts relating to the employee's work at Genasys.  As in *Armorlite*, broad employment agreements, such as the ones at issue here, "encompass[] not only the dishonest employee with whom plaintiff is concerned, but also the honest employee who legitimately conceives an idea or improvement following his termination." *Id.*  It is these policy considerations that render the employment agreements unenforceably broad.

Courts disagree about whether a "trade secret exception" exists under Section 16600. *Arthur J. Gallagher & Co. v. Tarantino*, 498 F. Supp. 3d 1155, 1169 (N.D. Cal. 2020) ("[T]here is not a clear consensus as to whether there is such an exception to § 16600, although courts still have the ability 'to enjoin the misuse of trade secrets as an independent wrong, either as a tort or a violation of the Unfair Competition Law.'"); *cf. Applied Materials, Inc. v. Advanced Micro-Fabrication Equip. (Shanghai) Co.*, 630 F. Supp. 2d 1084, 1090 (N.D. Cal. 2009)  ("The Court, however, finds that case law amply supports the existence of such a[ Section 16600] exception.").  Such an exception would permit an otherwise invalid employee agreement to stand if "necessary to protect an employer's trade secret."  *Gatan, Inc. v. Nion Co.*, No. 15-CV-1862-PJH, 2016 WL 1243477, at *3 (N.D.

---

light, therefore, the conduct is enjoinable *not* because it falls within a judicially-created 'exception' to section 16600's ban on contractual nonsolicitation clauses, but is instead enjoinable because it is wrongful independent of any contractual undertaking." (emphasis in original)).

Cal. Mar. 30, 2016) (citing *Asset Mktg. Sys., Inc. v. Gagnon*, 542 F.3d 748, 758 (9th Cir. 2008)). Plaintiff's employee agreements, however, are not necessary to protect Genasys' alleged trade secrets and thus, even if such an exception does exist, Plaintiff's agreements would remain void and unenforceable.

Because Plaintiff's employee agreements fail under Section 16600 and do not qualify for any exception, the Court **GRANTS** Defendants' Motions to Dismiss the breach of contract claims and **DISMISSES** those claims against *all* Defendants.

## III. California's Uniform Trade Secrets Act ("CUTSA") and the Defend Trade Secrets Act ("DTSA")

"Courts have held that the DTSA and the CUTSA share the same pleading requirements for the identification of trade secrets." *Alta Devices, Inc. v. LG Elecs., Inc.*, 343 F. Supp. 3d 868, 880–81 (N.D. Cal. 2018); *see also InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 657 (9th Cir. 2020) ("Courts have analyzed these claims together because the elements are substantially similar."). "To state a claim for trade secret misappropriation under the DTSA and the CUTSA, a plaintiff must allege that: '(1) the plaintiff owned a trade secret; (2) the defendant misappropriated the trade secret; and (3) the defendant's actions damaged the plaintiff.'" *Id.* at 877 (quoting *Space Data Corp. v. X*, No. 16-cv-03260-BLF, 2017 WL 5013363, at *2 (N.D. Cal. Feb. 16, 2017)).

The definition of a "trade secret" is extremely similar under the DTSA and CUTSA. *See Workplace Techs. Rsch., Inc. v. Project Mgmt. Inst., Inc.*, No. 18CV1927 JM (MSB), 2021 WL 4895977, at *20 (S.D. Cal. Oct. 20, 2021). Under the DTSA, a "trade secret" is:

> financial, business, scientific, technical, economic, or engineering information . . . if—(A) the owner thereof has taken reasonable measures to keep such information secret; and (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). Under the CUTSA, a "trade secret" is:

/ / /

information, including a formula, pattern, compilation, program, device, method, technique, or process that: (1) [d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and (2) [i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).  Under either statute, "[t]herefore, the definition of trade secret consists of three elements: (1) information, (2) that is valuable because it is unknown to others, and (3) that the owner has attempted to keep secret." *InteliClear,* 978 F.3d at 657. "[I]nsight, knowledge[,] and know-how acquired by an insider to a particular trade does not, in and of itself, constitute trade secrets." *Calendar Rsch. LLC v. StubHub, Inc.*, No. 2:17-CV-04062-SVW-SS, 2017 WL 10378336, at *2 (C.D. Cal. Aug. 16, 2017) (quoting *Agency Solutions.com, LLC v. TriZetto Grp., Inc.,* 819 F. Supp. 2d 1001, 1019 (E.D. Cal. 2011)).  To allege a trade secret, a plaintiff must "describe the subject matter of the trade secret with sufficient particularity to separate it from matters of general knowledge in the trade or of special persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d 69, 75 (N.D. Cal. 2020) (*quoting Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018)).

"Under both the DTSA and the CUTSA, 'misappropriation' means either (1) the [a]cquisition of a trade secret by another person who knows or has reason to know that the trade secret was acquired by improper means; or (2) the [d]isclosure or use of a trade secret of another without express or implied consent." *Alta Devices, Inc.* 343 F. Supp. 3d at 877 (citing 18 U.S.C. § 1839(5); Cal. Civ. Code § 3426.1(b)) (internal quotation omitted).

"To have independent economic value, a trade secret must be 'sufficiently valuable and secret to afford an actual or potential economic advantage over others.'" *Calendar Rsch.*, 2017 WL 10378336, at *3 (quoting *Yield Dynamics, Inc. v. TEA Sys. Corp.,* 154 Cal. App. 4th 547, 564 (2007)).  "[C]ircumstantial evidence of the resources invested in producing the information, the precautions taken to protect its secrecy, and the willingness

16

of others to pay for its access" all can sufficiently meet the low standard to show trade secrets derive economic value. *Id.* at *3–4.

### A.    *Naujok*

Naujok moves to dismiss Plaintiff's claims for violation of CUTSA and DTSA because (1) "Plaintiff fails to allege ownership of any trade secret with sufficient particularity;" (2) "Plaintiff's protected information does not constitute trade secrets as they have been published, are well known[,] and [are] not secret;" and (3) "Plaintiff fails to allege Naujok misappropriated Plaintiff's trade secrets through acquisition or use." (Naujok MTD at 16, 20.)

The Court **AGREES** that Plaintiff fails to plead with particularity its trade secret claims as they are "impermissibly conclusory." *See Synopsys, Inc. v. ATopTech, Inc.*, No. C 13-CV-02965 SC, 2013 WL 5770542, at *6 (N.D. Cal. Oct. 24, 2013) ("Materials are not trade secrets just because Plaintiff says they are: there must be some minimally plausible factual explanation for why trade secret protection applies."). Plaintiff alleges that "[t]he Protected Information, including, but not limited to, the Army Confidential Presentation Materials and additional Confidential Client Data, the Proposed Product Modifications, the Customer Network, and the Pricing Information each constitute trade secrets." (Compl. ¶¶ 72, 82.) Instead of detailing how and why "this array of potential sources" are protected trade secrets, however, Plaintiff relies on conclusory buzzwords pulled from CUTSA and DTSA. (*See id.*); *see also Synopsys*, 2013 WL 5770542, at *6.

In *Synopsys*, the court found that "vague references to an enormous array of potential sources do not suffice to survive" a motion to dismiss when the court cannot "determine where trade secret protection begins and ends as to any of this material." 2013 WL 5770542, at *6. Similarly, in *Vendavo*, the court found the "conclusory and generalized allegations" to be insufficient when described "in broad, categorical terms, more descriptive of the types of information that generally *may* qualify as protectable trade secrets than as any kind of listing of particular trade secrets." *See* 2018 WL 1456697, at *4 (emphasis in original); *cf. Navigation Holdings,* 445 F. Supp. 3d at 77 (finding the

plaintiffs' description of their client information sufficient when they thoroughly detailed who their clientele included, what information they maintain about their clientele, and the work put into assembling the clientele database).

Here, the Court confronts the same issue.  As in *Synopsys* and *Vendavo*, Plaintiff fails to plead facts supporting its conclusory allegations that the identified sources of information constitute trade secrets.  Further, some of the information within the categories listed is publicly available, as Plaintiff itself acknowledges, (*see* Naujok Opp'n at 16; *see also* Compl. ¶ 27), which, without more, fails to provide the Court with a roadmap to distill what information may be a trade secret and what may not.  Thus, the Court **GRANTS** Naujok's Motion to Dismiss the CUTSA and DTSA claims.[9]

### B.    *Vector Acoustics and Hernan Lopez*

First, Defendants contend that "[b]ecause the [Army] presentation and the presentation materials were created by the Army, under well-established copyright law, the Army, and not Plaintiff, is the owner of said presentation and materials." (Vector Lopez MTD at 13.)  Second, Defendants believe the pleading is so "spartan" that it is not clear what constitutes the "confidential client data"—i.e., the substance of the alleged trade secret information, the customers involved, any steps Plaintiff took to keep the information secret, and various other details necessary for Defendants to understand the allegations. (*Id.* at 14.)  Third, Defendants contest the allegation that "the idea of adding Bluetooth capability to a product" or "the idea to make speakers more powerful" belong to Plaintiff because they are "ideas generally known in society" and the "speaker trade." (*Id.* at 15.) Fourth, Defendants contend that Plaintiff did not list anything other than customer name and contact information in the Complaint as part of the "customer network" and that this

---

[9]    Because the Court finds that Plaintiff does not plead with particularity its trade secret claims, the Court cannot discern whether the alleged trade secrets are in fact trade secrets under CUTSA and DTSA as it is not clear what information Plaintiff contends should be found to be protected.  Plaintiff does, however, adequately describe how Defendants misappropriated the alleged trade secrets through their acquisition during employment and use at Vector Acoustics following termination of their employment. *See infra* Section III.B; (*see also* Compl. ¶¶ 50–56.)

allegation, without more, does not qualify as a trade secret.  (*Id.* at 16.)  Finally, Defendants state that "Plaintiff does not allege why its pricing is protectable and why it gives it a competitive advantage" and that Plaintiff "publishes its pricing on the GSA's website" and thus the information does not constitute trade secrets.  (*Id.* at 17); *see also supra* note 4.

Plaintiff opposes, relying on *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, which instructs that a plaintiff's burden, at the motion to dismiss stage in a trade secret case, is to identify at least one trade secret with sufficient particularity to create a triable issue, *see* 978 F.3d 653, 659 (9th Cir. 2020), and contends it has "easily" met that standard.  (Vector Lopez Opp'n at 14.)  Plaintiff additionally contends it adequately alleges protectable trade secrets under the umbrella of "Client Confidential Data."  (*Id.*)  Further, Plaintiff cites *BladeRoom Grp. Ltd. v. Facebook, Inc.*, 219 F. Supp. 3d 984, 990 (N.D. Cal. 2017), for the proposition that ownership of a trade secret is treated differently than ownership in a copyright case.  (*Id.* at 15.)

Plaintiff's statements of the law are all correct; however, Plaintiff is missing the essential first element—that Plaintiff in fact owns a trade secret.  Plaintiff's allegations "simply recite the statutory definition of a trade secret."  *See Pellerin v. Honeywell Int'l, Inc.*, 877 F. Supp. 2d 983, 988 (S.D. Cal. 2012) (finding the defendant's trade secret counterclaim failed because, while it "identified the end product," it did not "describe the manufacturing process with sufficient particularity to put [the p]laintiffs on notice" of the actual trade secret").  As described above, *see supra* Section III.A, the trade secret claims are "impermissibly vague," and thus the Court **GRANTS** Vector Acoustics and Hernan Lopez's Motion to Dismiss the CUTSA and DTSA claims.

## VI.    Unjust Enrichment

There is disagreement among California courts as to whether a standalone cause of action exists for unjust enrichment.  *See Snopes Media Grp., Inc. v. Mikkelson*, No. 21-CV-1730-BAS-DEB, 2022 WL 1343106, at *5 (S.D. Cal. May 3, 2022); *see also Doe v. Roblox Corp.*, No. 3:21-CV-03943-WHO, 2022 WL 1459568, at *12 (N.D. Cal. May 9, 2022) ("California case law appears unsettled on the availability of [unjust enrichment as]

a cause of action." (quoting *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016))).   The Ninth Circuit, however, "has construed the common law to allow an unjust enrichment cause of action through quasi-contract." *ESG Cap. Partners*, 828 F.3d at 1038 (citing *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015)). Further, in *ESG Capital Partners*, the Ninth Circuit allowed a cause of action of unjust enrichment to go forward because it "state[d] a claim for relief as an independent cause of action or as a quasi-contract claim for restitution."  828 F.3d at 1038.[10]  Since the Ninth Circuit's decision in 2016, many courts in this Circuit have followed suit, allowing unjust enrichment claims to proceed outside of quasi-contract.[11]  *See Snopes Media Grp.*, 2022 WL 1343106, at *5; *see also Giannetta v. Marmel*, No. 5:20-CV-01410-RGK-KK, 2021 WL 2954083, at *3 (C.D. Cal. Mar. 19, 2021) ("[I]n the Ninth Circuit, courts consider claims for unjust enrichment.").[12]  "To allege unjust enrichment as an independent cause of action, a plaintiff must show that the defendant received and unjustly retained a benefit at the plaintiff's expense." *ESG Cap. Partners*, 828 F.3d at 1038.

Naujok moves to dismiss Plaintiff's unjust enrichment claim as it is a remedy rather than a cause of action, or alternatively, is preempted by CUTSA.  (Naujok MTD at 22.) Vector and Lopez likewise move to dismiss the claim for unjust enrichment as there is "no separate cause of action."  (Vector Lopez MTD at 17.)  Plaintiff responds that it is permitted to file an unjust enrichment claim as an alternative form of relief and that it is premature

/ / /

---

[10]     Permitting an independent cause of action was a reversal from one year prior in *Astiana*, in which the Ninth Circuit agreed with the district court that, "in California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'"  783 F.3d at 762 (citing *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350 (2010); *Jogani v. Super. Ct.*, 165 Cal. App. 4th 901 (2008)).

[11]     Indeed, all but one of the federal cases cited by Defendants in their Motions to Dismiss and Naujok's Reply were decided prior to the Ninth Circuit's 2016 decision in *ESG Capital Partners*.  The single 2021 case cited only to state law precedent from 2003 and 2004 and did not expand on its reasoning.

[12]     Many courts, however, appear to continue to rely on *Astiana* in stating that there is no standalone cause of action for unjust enrichment.

22-CV-152 TWR (BLM)

for the Court to consider whether the unjust enrichment claim is preempted by CUTSA. (Naujok Opp'n at 18.[13])

Plaintiff cites to *In re Sony Gaming Networks and Customer Data Security Breach Litigation*, 996 F. Supp. 2d 942, 985 n.37 (S.D. Cal. 2014), in support of its proposition that unjust enrichment may be filed as an alternative form of relief. (Naujok Opp'n at 18.) Plaintiff's reliance, however, is misplaced. Despite being a Southern District of California case, the footnote to which Plaintiff cited relies on the state laws of Florida, Michigan, New York, and Ohio. *See In re Sony*, 996 F. Supp. 2d at 985 n.37. In contrast, California law appears to disagree and permit CUTSA to preempt common law tort claims when they "do not genuinely allege 'alternative legal theories' but are a transparent attempt to evade the strictures of CUTSA by restating a trade secrets claim as something else." *Loop AI Labs Inc v. Gatti*, No. 15-CV-00798-HSG, 2015 WL 5158461, at *2 (N.D. Cal. Sept. 2, 2015) (citing *Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 240 (2010), *disapproved on other grounds by Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310 (2011)).[14] Plaintiff seems to acknowledge that it is seeking to evade the preemption of CUTSA by admitting to pleading unjust enrichment as an alternative form of relief despite the fact that it was pled with the same nucleus of facts. (*See* Naujok Opp'n at 18.) Thus, the Court **DISMISSES** the unjust enrichment claim against *all* Defendants.

/ / /

/ / /

/ / /

---

[13]     In many instances, Plaintiff used the same arguments in both opposition briefs. For ease of reference, only one opposition brief is cited when they are identical.

[14]     "Although the California Supreme Court has not expressly articulated the scope of CUTSA's supersession of claims arising from the alleged misappropriation of non-trade secret information, 'the majority of district courts that have considered *Silvaco* have held that CUTSA supersedes claims based on the misappropriation of information that does not satisfy the definition of trade secret under CUTSA.'" *Loop AI Labs Inc.*, 2015 WL 5158461, at *2 (quoting *SunPower Corp.*, 2012 WL 6160472, at *6).

## V.    Unfair Competition Under California Business and Professions Code Section 17200

"[U]nfair competition shall mean and include any unlawful, unfair[,] or fraudulent business act or practice and unfair, deceptive, untrue[,] or misleading advertising and any act prohibited by Chapter 1."  Cal. Bus. & Prof. Code § 17200.  "[T]o establish standing under the UCL a plaintiff must (1) establish a loss or deprivation of money sufficient to qualify as injury in fact, i.e., *economic injury*[;] and (2) show that the economic injury was the result of, i.e., *caused by*, the unfair business practice . . . that is the gravamen of the claim."  *Missud v. Oakland Coliseum Joint Venture*, No. 12-02967 JCS, 2013 WL 3286193, at *19 (N.D. Cal. June 27, 2013) (emphasis in original) (quoting *Lawther v. One West Bank, FSB*, 2012 WL 298110, at *23 (N.D. Cal. Feb. 1, 2012)).  A plaintiff may establish a violation under any of the three prongs.  *Id.*

There is disagreement among Ninth Circuit district courts as to whether CUTSA supersedes Section 17200 claims.  *Compare, e.g.*, *Waymo LLC v. Uber Techs., Inc.*, 256 F. Supp. 3d 1059, 1062 (N.D. Cal. 2017) ("Under California law, CUTSA provides the exclusive civil remedy for conduct falling within its terms and supersedes other civil remedies based upon misappropriation of a trade secret." (citing Cal. Civ. Code § 3426.7; *Silvaco Data Sys*, 184 Cal. App. 4th at 236)); *and Strategic Partners Inc. v. Vestagen Protective Techs. Inc.*, No. 2:16-CV-05900-RGK-PLAX, 2016 WL 10611186, at *5 (C.D. Cal. Nov. 23, 2016) ("[A] CUTSA claim may preempt a UCL claim."), *with, e.g.*, *DJO Glob., Inc. v. Glader*, No. 3:16-CV-02208-CAB-NLS, 2016 WL 11622009, at *8 (S.D. Cal. Dec. 22, 2016) ("[I]t is well-settled that misappropriation of trade secrets in violation of CUTSA can form the predicate for an unfair competition claim under the UCL.").  Those courts concluding that CUTSA supersedes UCL claims do so on the basis of the "nucleus of facts test," i.e., non-CUTSA claims are superseded by CUTSA where they are based "on the same nucleus of facts as trade secret misappropriation."  *See Waymo LLC*, 256 F. Supp. 3d at 1062.  "The nucleus of facts test does not focus on whether a non-CUTSA claim requires the pleading of different elements than the CUTSA claim, but rather on whether

there is a *material distinction* between the wrongdoing alleged in a CUTSA claim and that alleged in the non-CUTSA claim." *Becton, Dickinson & Co. v. Cytek Bioscis. Inc.*, No. 18-CV-00933-MMC, 2018 WL 2298500, at *5 (N.D. Cal. May 21, 2018) (emphasis added). As discussed above, *see supra* Section IV, there is no material difference here between the CUTSA and non-CUTSA claims.

Because Plaintiff has failed sufficiently to plead any specific trade secret, *see supra* Section III, the Court agrees with Plaintiff, (*see* Vector Lopez Opp'n at 22), that "[d]efendants' motion to dismiss based on preemption cannot be addressed until it is determined whether the allegedly misappropriated information constitutes a trade secret." *Amron Int'l Diving Supply, Inc. v. Hydrolinx Diving Commc'n, Inc.*, No. 11-CV-1890-H JMA, 2011 WL 5025178, at *10 (S.D. Cal. Oct. 21, 2011) ("[U]ntil the distinction is made between [the plaintiff]'s allegedly misappropriated trade secret information and its confidential or non-confidential proprietary non-trade secret information, the question of preemption should not be addressed."). Without knowing which allegations—if any— contain valid trade secrets, the Court is not able to determine whether those claims are preempted by CUTSA. Accordingly, the Court **DENIES** Defendants' Motions to Dismiss Plaintiff's claim under Section 17200.

## VI. Attorneys' Fees and Costs

Naujok states, pursuant to California Code of Civil Procedure section 3426.4, that should the Court dismiss Plaintiff's Complaint, he is entitled to attorneys' fees and costs as the prevailing party. (Naujok MTD at 26.) This request is premature: Because the Court grants the above dismissals with leave to amend, Naujok is not yet a prevailing party.

## VII. Motion for a More Definite Statement

Naujok requests that if the Court does not dismiss the Complaint pursuant to Rule 12(b)(6), Plaintiff be required to provide a more definite statement. (Naujok MTD at 25.) "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must

point out the defects complained of and the details desired." Fed. R. Civ. P. 12. Naujok prepared an extremely adequate and detailed response to Plaintiff's Complaint and did not make a Rule 12(e) motion prior to filing a responsive pleading. Additionally, the Court grants in part Naujok's responsive motion to dismiss. Accordingly, the Court **DENIES** Naujok's alternative request.

## CONCLUSION

In light of the foregoing, the Court **GRANTS IN PART AND DENIES IN PART** Defendants' Motions to Dismiss. Specifically, the Court:

1. **GRANTS** Naujok's Motion to Dismiss the Breach of Contract Claim,

2. **GRANTS** Vector Acoustic and Hernan Lopez's Motion to Dismiss Breach of Contract Claim,

3. **GRANTS** Naujok's Motion to Dismiss the CUTSA Claim,

4. **GRANTS** Vector Acoustic's Motion to Dismiss the CUTSA Claim,

5. **GRANTS** Naujok's Motion to Dismiss the DTSA Claim,

6. **GRANTS** Vector Acoustic's Motion to Dismiss the DTSA Claim,

7. **GRANTS** Naujok's Motion to Dismiss the Unjust Enrichment Claim,

8. **GRANTS** Vector Acoustic's Motion to Dismiss the Unjust Enrichment Claim,

9. **DENIES** Naujok's Motion to Dismiss the Section 17200 Claim,

10. **DENIES** Vector Acoustic's Motion to Dismiss the Section 17200 Claim,

11. **DENIES** Naujok's Request for Attorneys' Fees, and

12. **DENIES** Naujok's Request for a More Definite Statement.

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

1       The Court **DISMISSES** all claims specified above **WITHOUT PREJUDICE** and

2   **GRANTS** Plaintiff leave to amend its Complaint.  Plaintiff **MAY FILE** an amended

3   complaint curing the deficiencies outlined in this Order within <u>fourteen (14) days</u> of the

4   electronic docketing of this Order.  *Should Plaintiff elect not to file a timely amended*

5   *complaint, this action will proceed as to Plaintiff's surviving causes of action.*

6       **IT IS SO ORDERED.**

7   Dated:  November 1, 2022

8

9   Honorable Todd W. Robinson
    United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

22-CV-152 TWR (BLM)